Abraham N. Geller, J.
Seeking to facilitate the trial disposition of the remaining 345 fixture claims, each containing numerous items, in this condemnation proceeding which thus far have not been adjusted between the parties on a basis within the city-Federal maximum approved prices (the Federal procedure on an urban renewal project barring settlement for any amount in excess thereof and requiring a trial), the court has suggested that the parties in pretrial conferences strive to shorten the trials by a stipulation whereby only certain enumerated disputed items, principally involving the issue of whether the item is a compensable fixture, will be tried. In addition, the court has, in a general trial applicable to all claimants subject to a showing of exceptional circumstances, tried as an issue common to the great majority of these claims the question as to whether the depreciated' reproduction cost of installation attachments to set in place a machine or equipment, whether the latter is or is not removed by claimants, is a compensable item per se in the same sense as electric wiring and water piping installed solely for the proper functioning of machines or equip *1009 ment and necessarily left behind by claimants upon condemnation as valueless (see opn., N. Y. L. J., Oct. 19, 1966, p. 17, col. 5).
Similarly, the court has now conducted a general trial on the issue of air-conditioning equipment common to many claims, after due notice to all attorneys to attend with the right to participate therein and in the trial of which many did participate in the presence of a large number of attorneys. Extended evidence was adduced by claimants and by the city. The general rule hereinafter stated and construed will be deemed applicable to any claim containing such item, unless there be a showing on any particular claim of circumstances affecting that item warranting a different determination.
The city has allowed as compensable.fixtures the special electric wiring, plumbing water lines and ductwork, where these accessories were part of the particular air-conditioning system, but has not allowed for the unit itself, the water tower (it appears that practically all the air conditioners in this area were water-cooled) or for the installation cost. The matter of installation has already been determined within the general rule previously referred to. That leaves for decision the water tower and the unit.
A proper analysis of the problem will be aided by a review of the basic principles underlying the evolving concept giving tenants the benefit of an exception for their trade fixtures to the traditional view of fixtures in the law of real property. (Marraro v. State of New York, 12 N Y 2d 285, 292-293.) As applied to a taking in eminent domain, the measure of just compensation being the loss to the owner and not the gain to the taker, it must be kept in mind that the condemnor has no use for either the building or the fixtures but must pay for their sound value at time of condemnation.
The mere fact of removability is not the criterion for distinguishing between a fixture compensable in eminent domain and a noncompensable item of mere personalty. Almost all trade fixtures are removable, some with relative ease and others with some difficulty. So long as it is annexed or connected in some fashion to the structure, it may fall within the definition of a fixture if it meets the more important tests of use and adaptability to the premises and a disproportionate loss in value upon enforced severance therefrom.
A compensable trade fixture falls within a middle category which “New York regards as neither being so ‘ distinctively realty ’ as to belong to the landlord nor as being removable with such little difficulty or loss in value as to have retained its personal character” (United States v. Certain Property, etc., *1010 306 F. 2d 439, 453). “ The lines marking the boundaries of the ‘ middle category ’ are anything but bright, and views on cases near the boundaries will necessarily differ” (United States v. Certain Props., etc., 344 F. 2d 142, 149). In the latter opinion the court referred (p. 145) to “a tenant’s reasonable expectation that he will realize the value of such fixtures, either through use during the term of his lease or through an award in the event of premature termination by eminent domain ”. An award in condemnation may be made for property, “ albeit readily removable without damage to the freehold, if such property were used for business purposes and would lose substantially all of its value after severance ” (Matter of City of New York [339 Grand St. Corp.], 10 A D 2d 498, 500).
Considering, first, the water tower, generally attached to a base affixed to the roof, it seems clearly to fall within the boundaries of the middle category. Since it is burdened with heavy moving expenses and subject to rust and corrosion, the owner must be deemed to have reasonably expected to realize its value through use during the term of his occupancy at those premises and to have intended it as a permanent affixation at that place for the period of its useful life. It would, of course, also be subject to substantial loss of value upon severance. It is therefore held to be compensable apart from the question as to whether the unit itself is or is not under the particular circumstances treated as a compensable fixture.
Consideration of the problem of the unit requires an analysis of various types and of the impact of the New York City regulations regarding water-cooled air conditioners.
It appears that no claims have been filed for the window or transom-type units, or for the “ free-standing plug-in” units not requiring water lines or ductwork, these plainly not being specially adaptable for particular premises and readily usable at other premises. There was no central air-conditioning in any of the affected buildings and that problem is not before us.
The evidence established that all units, ranging from about 2 tons’ to 20 tons’ capacity, are standard items made by a number of well-known companies; that the units under 10 tons generally are installed by a licensed electrician or contractor roughly estimating the tonnage required for those premises and furnishing electrical wiring, plumbing piping lines and, rarely, ductwork for better distribution of the cool air; that such units may be readily used elsewhere under conditions which may vary within a 25% range from the original installation; that, where units of 10 tons or over are needed, an engineer may be asked to make a more precise survey of the heat load and distribution *1011 for that particular layout, type of structure, use of premises, number of people, etc., and the type of unit and nature of accessory wiring, piping and ductwork in such case may possibly qualify as an integrated and specially adapted air-conditioning system.
With respect to the impact of the water shortage problem in New York City, it appears that air conditioners, other than the small unitized types, in their inception were water-cooled units, but the trend in recent years, particularly in this city, is toward air-cooled units. A regulation promulgated by the city in 1956 required all water-cooled air conditioners of 6 tons or more to have a water conserving device; in September, 1964, two months before vesting date in this proceeding, a water conserving device was required to be provided for water-cooled units of 3 tons or more. Use of such a water-cooled unit without a device was prohibited in the old as well as the new place.
The fact that a claimant having a water-cooled unit might decide to leave it and purchase an air-cooled unit for his new premises because of the expense of a water conserving device which he may not as yet have installed, or because he would consider it more feasible economically when forced to move to change from a somewhat obsolescent unit burdened with the risk of further restricted use to an up-to-date guaranteed air-cooled unit, does not make it a compensable fixture.
The only possible basis for holding that an air-conditioner unit, a standard product, is a compensable fixture is when it is a part of an air-conditioning system with special wiring, piping and ductwork, all designed and made expressly adaptable for a particular layout and area. The testimony given by the city’s expert on air conditioning tends to support the distinction here drawn. Compensability can be awarded only when a showing of the pertinent circumstances in a particular case warrants the inference that the unit together with its special equipment was intended as an integrated air-conditioning system to be a permanent installation for its useful life in those premises and would lose a large part of its value if removed for use in other premises which might present some variant factor of layout, size, type of structure, exposure to sun, ingress, egress, etc. In United States v. Certain Props., etc. (344 F. 2d 142, supra), the court was applying New York law, while indicating clearly that it would independently have arrived at the same conclusion. In discussing the air-conditioning equipment there involved, it observed (p. 149): “ New York appears to take an approach consistent with business realities,” and held that, where the Trial Judge had included ducts and piping of *1012 air-conditioning “ systems ” but excluded machines and water towers, the latter should also have been allowed as compensable fixture items.
Accordingly, the general rule governing the unit itself is that it is not compensable, subject to proof in a particular case that it is part of a system so adapted for use in those premises that it would lose a substantial part of its value upon severance and removal to other premises.
It should be noted that the evidence established that the various accessory installations here discussed represented a greater proportion of the total cost than the unit itself; that the city has allowed as compensable the depreciated reproduction cost of the wiring, piping and ductwork; that the court has previously held that the depreciated reproduction cost of installation in place is compensable; and that it is now holding that the depreciated reproduction cost of the water tower is compensable.
It should also be noted that in any event, as in the case of any other item of property, whether or not a fixture, if the unit is actually removed by the occupant, obviously there is no right to compensation therefor.