Keating, J.
 

 Walter C. Rose is the owner of approximately 20 acres of land in the Town of Chenango, Broome County. Two corporations, of which Rose is the sole stockholder, leased this property. Binghamton Sand & Crushed Stone Corporation
 
 *83
 
 (hereinafter Binghamton) processed and sold gravel, sand and stone and McIntosh Beady Mix Concrete Corporation (hereinafter McIntosh) produced and sold concrete from this location.
 

 The unique attribute of the property was its proximity to an abundant source of water. The Chenango Biver abutted the property for 1,400 feet. This water source made it feasible to operate the sand and gravel business which required enormous quantities of water to clean silt and other impurities from the raw materials processed in order to comply with specifications established by purchasers. Binghamton pumped approximately 800,000 to 1,000,000 gallons of water on a normal business day from the Chenango Biver to satisfy its requirements. The water was introduced into the manufacturing process after the raw materials had been drawn by conveyors to various hoppers, crushers and screens where the material was washed and sorted. After processing the water was recirculated into the river, after first being filtered, and the sand and gravel were stockpiled for sale.
 

 In October of 1962 the State filed with the Broome County Clerk’s office a taking map of the Chenango Biver bed. In May of 1964 Bose became aware of the State’s contemplated plans for the diversion of the river and realized that they would adversely affect his interests and those of his tenants. The State planned to move the river bed in the area in which Binghamton maintained its water intake line. The diversion of the Chenango Biver was necessitated in order to protect an interstate artery which was under construction and because of the need for gravel located in the river bed for road construction. Bose notified the State authorities that, if Binghamton’s withdrawal of water from and discharge into the Chenango Biver were interfered with, it would substantially destroy the utility of the plants located on his property and force the removal of these operations to another location.
 

 At the end of July, 1964 Bose was informed that Binghamton had to obtain an alternate source of water because construction of the highway necessitated the cutting off of water to the intake pump supplying wash water to the plant. Binghamton, however, was unable either to devise a system of wells which could supply its water needs or develop a feasible intake system from the diverted Chenango Biver to maintain an adequate water
 
 *84
 
 supply for its sand and gravel operation. Therefore, in June of 1965 Binghamton and McIntosh began to develop a new site further up the Chenango River to continue their operations.
 
 [1]
 

 McIntosh constructed an entirely new facility at the new site leaving all its industrial machinery and buildings at the old site to be sold. Binghamton constructed almost an entirely new plant leaving all but one machine, a Cedar Rapids Jaw Crusher, and three parts from another, a Kennedy Van Saun 37½ GC Machine, at the old plant site. Rose, Binghamton and McIntosh filed claims with the State for compensation for the loss of value of their property due to the State’s diversion and taking of the Chenango River bed. Because the individual claimant Rose was the sole owner of the corporate claimants, the parties and the Court of Claims treated the claims as having a unity of interest and the claims were tried and considered together. The claimants requested compensation for the diminution in value of the land and the loss which occurred because the buildings and fixtures owned by the two corporate claimants which were situated on the property lost substantially all their utility when the State destroyed the riparian rights to Rose’s property.
 

 The Court of Claims denied Rose any recovery for loss of value of the land. The court found that the property did not depreciate in value due to the State’s appropriation. The court, however, made an award of $208,615 to the claimants for the loss of utility of buildings and fixtures owned by Binghamton and McIntosh because of the appropriation by the State of the riparian rights appurtenant to the plant sites. The court arrived at an award by determining the difference between salvage value and present value for the buildings and industrial machinery found to be fixtures located on the property. The State appeals from an order of the Appellate Division, Third Department, affirming this judgment with one dissent.
 

 The issue whether the structures located on Rose’s property were properly characterized as fixtures is not presently before us for review since the finding of the Court of Claims that these
 
 *85
 
 items were fixtures was affirmed by the Appellate Division. (Cohen and Barger, Powers of the New York Court of Appeals, §§ 109-113).
 
 [2]
 

 The State’s diversion and taking of the bed of the Chenango Biver was done pursuant to section 30 of the Highway Law. Subdivision 2 of section 30 of this law specifically defines the term
 
 “
 
 property ” for the purpose of compensable taking. The statute provides that
 
 “ ‘
 
 property ’ as used in this section is defined to include lands, waters, rights in lands or waters, structures, franchises and interests in land, including lands under water and riparian rights, and any and all other things and rights usually included within the said term and includes also any and all interests in such property less than full title, such as easements, permanent or temporary, rights-of-way, uses, leases, licenses and all other incorporeal hereditaments and any estate, interest or right legal or equitable.”
 

 It is clear that the destruction of riparian rights is compensable in the contemplation of the statute (cf.
 
 Wolfe
 
 v.
 
 State of New York,
 
 22 N Y 2d 292). With respect to compensation for the taldng of riparian rights the statute only codifies the existing case law which holds that the destruction of riparian rights by the State is compensable (see, e.g.,
 
 Chenango Bridge Co. r.Paige,
 
 83 N. Y. 178,185;
 
 Smith
 
 v.
 
 City of Rochester,
 
 92 N. Y. 463, 485;
 
 Matter of City of New York [West 205th St.],
 
 240 N. Y. 68, 72;
 
 City of New York
 
 v.
 
 Wilson & Co.,
 
 278 N. Y. 86,101-102). Since, in this case, the claimants were forced to remove their business operations due to the State’s diversion of the Chenango Biver bed, which destroyed Bose’s riparian rights to the natural flow of the watercourse past his property, the utility of the sand and gravel and cement plants was destroyed by the State’s action, and the injuries to the assets of the businesses flowed naturally from the destruction of the riparian rights and are compensable.
 

 The law of fixtures was evolved by the judiciary in order to ameliorate the harsh result to those who substantially improved property but who had less than a fee interest. (See, e.g.,
 
 McRea
 
 
 *86
 
 v.
 
 Central Nat. Bank,
 
 66 N. Y. 489;
 
 McKeage
 
 v.
 
 Hanover Fire Ins. Co.,
 
 81 N. Y. 38;
 
 Herzog
 
 v.
 
 Marx,
 
 202 N. Y. 1.) These rules, when applied in an eminent domain proceeding, protect the owner of this type of property from being deprived of compensation when the land upon which they are situated is condemned. (See, e.g.,
 
 Matter of City of New York [Allen St.],
 
 256 N. Y. 236;
 
 Matter of City of New York,
 
 192 N. Y. 295;
 
 Matter of Mayor of City of N. Y.,
 
 39 App. Div. 589.)
 

 New York talces a broad view in evaluating what improvements are to be regarded as fixtures. Not only is machinery deemed a fixture ‘ ‘ where it is installed in such manner that its removal will result in material injury to it or the realty, or where the building in which it is placed was specially designed to house it, or where there is other evidence that its installation was of a permanent nature”
 
 (Matter of City of New York [Whitlock Ave.],
 
 278 N. Y. 276, 281-282; see, e.g.,
 
 Matter of City of New York [Allen St.],
 
 256 N. Y. 236,
 
 supra),
 
 but also those improvements which are used for business purposes and which would lose substantial value if removed
 
 (City of Buffalo
 
 v.
 
 Michael,
 
 16 N Y 2d 88;
 
 Marraro
 
 v.
 
 State of New York,
 
 12 N Y 2d 285;
 
 Matter of City of New York [339 Grand St. Corp.],
 
 10 A D 2d 498).
 

 This formulation of the rules permits equitable treatment of the owner of fixtures. It signifies a recognition of the obvious realities confronting the business community. Modern business, in order to produce goods and services, invests heavily in cumbersome and complicated machinery which, because of the manner of its installation, can only be removed with difficulty. This approach to the problem of fixtures, however, recognizes that on occasion these structures can be profitably removed to another location and used by the owner. This will occur when the machine is specially adapted to the owner’s particular needs or when the owner cannot be assured of a favorable delivery because of his manufacturer’s lag time and, therefore, must remove the fixture to his new location in order to start production promptly. On these occasions, however, these items can only be moved normally at inordinate expense and, therefore, it would be inequitable to treat these items as personalty simply because of the possibility of removal at less than total destruction of the machine or the structure which houses it.
 

 
 *87
 
 Nevertheless, in attempting to deal fairly with claimants who are seeking compensation for the loss of fixtures, we must not lose sight of what the State’s precise responsibility is in the field of compensating those property owners who have suffered losses because of the State’s exercise of the power of eminent domain. The constitutional requirement of compensation mandates that the property owner be indemnified so that he may be put in the same relative position, insofar as this is possible, as if the taking had not occurred. (See
 
 Livingston
 
 v.
 
 Mayor of City of N. Y.,
 
 8 Wend. 85;
 
 Banner Milling Go.
 
 v.
 
 State of New York,
 
 240 N. Y. 533;
 
 Matter of Board of Water Supply of N. Y.,
 
 277 N. Y. 452;
 
 New York, 0. & W. Ry. Co.
 
 v.
 
 Livingston,
 
 238 N. Y, 300.) Just compensation is properly measured by determining what the owner has lost
 
 (St. Agnes Cemetery
 
 v.
 
 State of New York,
 
 3 N Y 2d 37, 43).
 

 Whether an item is to be considered personalty or treated as a fixture is properly determined by reference to the time of the taking
 
 (Matter of Department of Public Parks,
 
 53 Hun 280;
 
 Jackson
 
 v.
 
 State of New York,
 
 213 N. Y. 34;
 
 Matter of Board of Water Supply of N. Y.,
 
 277 N. Y. 452, supra;
 
 Kahlen
 
 v.
 
 State of New York,
 
 223 N. Y. 383;
 
 Wolfe
 
 v.
 
 State of New York,
 
 22 N Y 2d 292,
 
 supra).
 
 But this does not mean that the State is to pay for damages to fixtures by a simple reference to the time of taking as is the case with land. It is enough in these circumstances that the character of the property be determined with reference to the time of the taking by the State and the concept of “ just compensation ” be applied in a manner so that not only will the claimant but also the State be treated fairly. As was stated by Judge Cabdozo in
 
 New York, O. & W. Ry. Co.
 
 v.
 
 Livingston
 
 (238 N. Y. 300, 306, supra): “ ‘ It is the duty of the State, in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it ’
 
 (Searl
 
 v.
 
 School District, Lake County,
 
 133 U. S. at pp. 553, 562). No formula will be adequate unless its breadth of view and flexibility of adaptation are fitted and proportioned to the scheme and purpose of the inquest. The problem is one of justice between the individual proprietor on the one hand and on the other hand the sovereign ”.
 

 
 *88
 
 Fixtures are often severed from the property upon which they are located and profitably used elsewhere. (See, e.g.,
 
 City of Buffalo
 
 v.
 
 Michael,
 
 16 N Y 2d 88,
 
 supra; Marraro
 
 v.
 
 State of New York,
 
 12 N Y 2d 285,
 
 supra; Cooney Bros.
 
 v.
 
 State of New York,
 
 27 A D 2d 93:
 
 Matter of City of New York [Brooklyn
 
 Bridge], 51 Misc 2d 1008;
 
 Bullis
 
 v.
 
 State of New York,
 
 51 Misc 2d 448;
 
 Matter of City of New York [Brooklyn
 
 Bridge], 54 Misc 2d 424). The accepted method of valuing fixtures which are removed or could be removed is to determine the difference ' between salvage value of the item and present value in place (i.e., reproduction cost less depreciation). This method, though it employs the label salvage, does not indicate the item can only be used for scrap purposes, but the valuation method takes into account the use of the machine in a definable second-hand market for used industrial machinery. Thus, when a claimant removes his fixtures to a new location, they are not always properly valued by reference to a second-hand market in industrial equipment. The machinery, if removed or if it could be successfully removed, should be also valued by determining either the actual or contemplated costs of disassembling, trucking and reassembling the item at a new location. If the cost of removal is less than the difference between salvage value and present value in place, this is all the claimant is entitled to recover. The State is not required to place a claimant in a better position than he was before the taking by helping him, to finance a new facility.
 
 [3]
 
 ****8
 

 Where a prospective claimant desires to move his facilities, because of a taking by the State, but believes the items to be moved are fixtures, he should inform the State, if possible, of his intention to remove these items in order that the State may investigate the property.
 
 (Great A. & P. Tea Co.
 
 v.
 
 State of New York,
 
 22 N Y 2d 75, 90.) If the property is moved, without notice to the State, the claimant will not be able to receive
 
 *89
 
 compensation for these structures as fixtures unless the State forced the premature removal of the property
 
 (City of Buffalo
 
 v.
 
 Michael,
 
 16 N Y 2d 88, supra) or the property can be clearly shown to have been a fixture at the time of removal
 
 (Marraro
 
 v.
 
 State of New York,
 
 12 N Y 2d 285,
 
 supra; Cooney Bros.
 
 v.
 
 State of New York,
 
 27 A D 2d 93,
 
 supra).
 

 Where notice is given, however, the State cannot simply rely on the fact of removal at trial as the basis for contending that the property removed was in fact only personalty. A claimant should not be put in the dilemma of attempting to redress his damages by removing his fixtures to a new location in order to continue to operate his business, with the resulting saving to the State, and at the same time be faced with the possibility of only receiving an award based on statutory moving expenses for personalty.
 

 It would be inequitable to limit a claimant to statutory moving expenses for personalty, where the items are without question fixtures, as determined at the time of the taking. The Highway Law (§ 30, subd. 13-b), in force at the time of the taking in this case, only provided for a maximum moving expense award of $3,000 which would be an inadequate amount to compensate this claimant for a move. The section, even as presently amended to provide for a $25,000 maximum, would frequently be insufficient to compensate a claimant for the moving of all his personalty and large trade fixtures. In such circumstances, any holding which would limit the recovery to the statutory amount would simply call for the claimant to abandon his property at his old site and never seek to salvage any part of the property for his own use.
 

 Applying the previous discussion to the facts presented by this appeal, it is, clear that the award of the Court of Claims must be modified. The claimant permitted representatives of the State to come on the property and investigate. The State had an adequate opportunity to see the size and type of structures on the property and how they were affixed. The State’s main contention is that the claimant removed all his fixtures to the new plant site and thus should only receive the statutory maximum of $3,000 for moving expenses. The State’s reliance on the $3,000 maximum moving award for personalty, as previously discussed, is not applicable to the moving of fixtures. The State
 
 *90
 
 must either pay the reasonable moving fees or the difference between salvage and reproduction cost less depreciation/ whichever amount is smaller. The State’s contention that the claimant removed all the fixtures to the new plant site is not borne out by the record. However, one machine and parts of another were so removed, and these items must be deleted from the award of the Court of Claims.
 

 Binghamton incorporated a Cedar Rapids Jaw Crusher from the old plant site in its new installation. If the expenses of removing this machine to the new plant site exceed the compensation award for this item as calculated by the Court of Claims, the award should stand. If the moving expenses are less, then the claimant is entitled only to that amount.
 

 The claimant also testified that he removed the grinding ring, mantel and spindle of a Kennedy Van Saun 37½ GC Machine to his new plant to keep as replacement parts. If the expense of the partial removal of this machine to the new plant site plus the value in place less salvage of the parts remaining exceed the compensation award for this item as calculated by the Court of Claims, the award should stand. If the moving expenses plus the salvage value of the parts remaining is less, then the claimant is entitled only to that amount.
 

 The claimant is only to be placed in the same position as he was before the taking, not in a better financial or operating position because of the taking to the detriment of the State which is only required to make just compensation.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, and the matter remitted to the Court of Claims for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Breitel concur with Judge Keating; Judge Jasen dissents and votes to reverse and grant a new trial.
 

 Order modified, without costs, and case remitted to the Court of Claims for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . The State .did not contest the economic necessity of removing the Ready Mix Concrete operation even though it used only well water. The cement operation and the sand and gravel business were economically dependent on one another for profitability. McIntosh purchased one third of Binghamton’s production.
 

 [2]
 

 .
 
 The question .of whether an alternate source of water could possibly be developed on the claimant’s property was determined adversely to the State. The Court of Claims found that an alternate source of water could not be developed. This finding was affirmed by the Appellate Division and, therefore, for purpose of this appeal is conclusively determined.
 

 [3]
 

 . Even if fixtures ,could be removed the proper measure of damages cannot always be made with reference to moving expenses. If the claimant establishes that business necessity required it to construct an entirely new facility while operating the .old facility in order to maintain business contacts or satisfy contractual obligations, then the cost of moving the old fixtures should not be used. Also, in those instances where the fixtures though movable would not be appropriate in the new physical surroundings or their original motif would not complement the decorative scheme of the new facility because dated, moving expenses would not be the proper measure of damages.