In the Matter of the CITY OF NEW YORK, Appellant, Relative to Acquiring Title to Real Property Known as Bedford Stuyvesant (I) Community Development Plan, Central Brooklyn Model Cities Area. MERRIMAKER CORPORATION, Respondent.

Second Department, February 9, 1976

*W. Bernard Richland, Corporation Counsel, (Leonard Olarsch* and *L. Kevin Sheridan* of counsel), for appellant.

*Reavis & McGrath (Reginald S. Hardy, Dennis C. Cronin* and *K. Jane Fankhanel* of counsel), for respondent.

SHAPIRO, J. This is a condemnation proceeding pertaining to several parcels of real estate in the Bedford-Stuyvesant section of Brooklyn, including Damage Parcel 67—the subject of the instant appeal. Title vested in the City of New York (the City) on April 1, 1968. For approximately 25 years prior thereto, the claimant had continuously operated a plant for the manufacture of some 1,500 to 2,000 various types of paper and plastic products at the site in question. Approximately 110 to 115 people were employed in the business and about 130 machines were installed and utilized over the years.

The City appeals from so much of a tenth separate and partial final decree of the Supreme Court, Kings County, dated May 3, 1972, as, in awarding the claimant-respondent $754,223 for fixtures, included within that award $586,310 for fixtures which were not removed from the plant. We affirm.

The issues on this appeal are (1) whether the machinery left on the premises was valued by the correct method and (2) whether the detachable and movable dies, molds and "make readies" are fixtures. The items left behind appear by number in Schedule A annexed to the memorandum decision of the trial court. The trial court's award as to each item in Schedule A falls within the claimant's and the City's appraisals, except in those instances where the City did not appraise the property. In those cases, the trial court accepted the claimant's figures. The City's appraiser spent only part of one day inspecting the premises, and missed items 88 and 89, which were the two largest pieces of machinery in the plant (each weighing approximately 12 to 15 tons).

The City's position is twofold. First, that of the contested amount of $586,310, $276,964 pertains to (1) dies, (2) "make readies" and (3) molds, which are personalty and, therefore, not compensable. Second, that the trial court erred in awarding $309,346, based on the sound value (reproduction cost less depreciation) of the machines, since they were removable and that only disassembly, trucking and reassembly costs should have been awarded, i.e., that this award figure should be reduced by $217,997. Reduced to basics, the City argues that all of the nonremoved items were "movable" and, hence, not

compensable at all, or compensable at a lower valuation than that utilized by the trial court.

The trial court rendered a detailed and well-documented decision which exhaustively analyzed the law of fixtures and specifically delineated its reasons for the award. The City's reliance upon a theory that "movability" is the criterion for fixtures is not the law (see *Matter of City of New York [Ruppert Brewery Urban Renewal Project]*, 67 Misc 2d 863). That case cogently explicated the entire area of the law of fixtures. It was there held (pp 871-872):

"The basic law of fixtures and the criteria to determine their compensability in condemnation proceedings have been firmly established for over a century *(McRae v. Central Nat. Bank of Troy,* 66 N. Y. 489). No useful purpose would be here served by still another lengthy exposition of the genesis of the oft confirmed proposition that 'annexation, adaptability, and intention of permanence convert machinery into a fixture, regardless of removability' *(Matter of City of New York [Lincoln Sq. Slum Clearance Project]*, 24 Misc 2d 190, 202, mod. on other grounds 15 A D 2d 153, affd. 12 N Y 2d 1086). In the application of this threefold test, the all important criterion of intention of permanence 'is readily presumed in the case of an owner where (as here), he installs machinery in a building which is especially suited for that purpose, and with the object of carrying on his business therein' (p. 196). A more recent and additional basis of compensability applies to items that would lose substantial value if removed even though readily removable *(Jackson v. State of New York,* 213 N. Y. 34; *Matter of City of New York [North Riv. Water Front]*, 118 App. Div. 865; *Matter of City of New York [Seward Park Slum Clearance Project]*, 10 A D 2d 498; *Rose v. State of New York,* 24 N Y 2d 80; *City of Buffalo v. Clement Co.,* 28 N Y 2d 241).

"Thus it appears that the law, as long established, has clearly negated removability as the test of a fixture. Nevertheless, in this case and in every case involving fixtures tried in this jurisdiction in recent times, the city has relied on physical removability as the principal criterion of compensability. In this case, as in most other cases, it has done so in misapplied reliance on the *Matter of City of New York (Whitlock Ave.)* case (278 N Y 276) in which the Court of Appeals, after finding a failure of proof with respect to adaptability and intention of permanence, held that the readily removable looms claimed by the tenants in that proceeding were not

compensable as fixtures. Despite the total rejection of its theory in case after case, the Corporation Counsel persists in the futile repetition of the argument that all removable fixtures are per se personal property. In face of the recent decisions in *Rose v. State (supra); Cooney Bros. v. State of New York* (24 N Y 2d 387) and *Marraro v. State of New York* (12 N Y 2d 285), the time has surely come for the city to lay this ancient ghost to rest and in the future to adapt its legal posture to conform to its responsibilities to all parties including the court.

"The overwhelming proof in this case mandates the finding that on the basis of annexation (in effect conceded by the city's installation cost items), adaptability for the special purposes of claimant's business, intention of permanence and substantial loss of value on removal, the claimant is entitled to be compensated for the sound value in place of every claimed item of machinery and equipment contained in its appraisal.

"Although the city, in the course of the trial, attempted to show that some of these fixtures were actually moved to another part of the premises subsequent to title vesting and tagged for auction sale, the claim was not proven and all items are accordingly valued as in place on the basis of reproduction cost less depreciation. This is not to say that proof of removal would have affected compensability but only that, with respect to any fixtures proven to have been removed, a different measure of damages might then have been applied in accordance with the *Rose* and *Cooney* cases (see, also, *Matter of City of New York [Field's Baking Corp.]*, 27 A D 2d 539 and *Matter of City of New York [Aero-Chatillon Corp.]*, 35 A D 2d 808, revg. in part 54 Misc 2d 424; *City of Buffalo v. Clement Co., supra).*"

We agree with the trial court that the City's position is muddled since it persists in arguing that the movability of an item will negate a finding that it is a fixture, thereby reducing the compensable damages. In fact, the case of *Rose v State of New York* (24 NY2d 80), cited in the *Ruppert Brewery* case, specifically rejected that theory. However, *Rose* does lay down the rule that, if a fixture is removed or can be successfully removed, the measure of the award is either the sound value (reproduction cost less depreciation) or disassembly, moving and reassembly costs, whichever is the lesser (p 88). Based upon that case, the City argues that only the moving expenses

are compensable and that the trial court was in error when it awarded the claimant the sound value of all of the items in issue. We do not agree with the City's contention.

The bifurcated formula set forth in *Rose (supra)* pertains to removable items. The trial court here specifically found that the machinery which was left at the premises constituted fixtures which were *not* capable of removal. It properly found that the largest and most costly items could not be moved without destruction of parts of the building itself and of the foundations of the machinery. *Rose* has no application to this aspect of the decree; the valuation method used (sound value) was proper.

*Rose* is equally inapplicable to the molds, dies and "make readies". Although there is no doubt that these items are detachable and, hence, removable, the trial court found, based upon the evidence presented, that they were specifically designed, or altered, for the machinery itself and that, as such, they were part and parcel of what could not be removed and, equitably, could only be defined and evaluated as was their source of existence—the nonremovable machinery. It would be highly unjust to allow the claimant only the costs of physically moving items which lose their very utility when separated from the nonremovable fixtures. As to the molds, the City's expert admitted, on cross-examination, that they were specifically made for the instant machinery and, although offering no countervaluation, he thought the claimant's valuation of $98,240 was "a little high", "about 30%". The trial court awarded $83,504. As to the dies and "make readies", again the City offered no valuation. The trial court noted, therefore, that "since the claimant's valuation thereof is the only one submitted, the court is constrained to accept the claimant's appraised values of $72,320 and $121,140."

The trial court, upon adequate proof, specifically found: "Upon all the proofs, this court finds that as of the title vesting date, each and every item of machinery and equipment was (a) annexed to the realty or something appurtenant thereto; (b) applied to the use or purpose to which this part of the realty with which it is connected was appropriated; and (c) would sustain a loss of substantial value if removed; and that the intention of claimant as owner-occupant was to make the annexations permanent."

Having thus determined that the disputed items were fixtures, the trial court awarded damages based upon the sound

value method, which we believe to be the only equitable approach under the facts of this case. The contention of the City on this appeal that the machinery was, in fact, removable and that the attendant pieces could be profitably reused in other machines must be denied acceptance since it runs counter to the trial court's findings, which were based upon the claimant's testimony and, in part, corroborated by the City's engineer.

One additional fact should be noted. In the City's reply brief it argues that approximately "80 of the 139 items involved could have been carried or rolled out the front door". As an example, the City described item 94, which had a sound value of $10,335 but a total cost of removal of only $730. It contends that "under *Rose* claimant is entitled to $730", not the higher sound value. Item 94 is not part of schedule A (the items left at the site). It was a removed item and the trial court only awarded $730, the lesser amount.

Accordingly, the decree should be affirmed insofar as appealed from, with costs.

HOPKINS, Acting P.J., MARTUSCELLO, MARGETT and CHRIST, JJ., concur.

Tenth separate and partial final decree of the Supreme Court, Kings County, dated May 3, 1972, affirmed insofar as appealed from, with costs.