438 So.2d 857 (1983)
Harry MALONE and Vonice Malone, His Wife, D/B/a Acme Processors, Inc., Appellants,
v.
DIVISION OF ADMINISTRATION, STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION, Appellee.
No. 81-1840.
District Court of Appeal of Florida, Third District.
September 6, 1983.
Rehearing Denied November 2, 1983.
*859 Brigham, Reynolds, Moore, Muire & Gaylord and Toby Prince Brigham, Miami, for appellants.
Margaret-Ray Kemper and Alan E. DeSerio, Tallahassee, for appellee.
Before HUBBART, NESBITT and BASKIN, JJ.
NESBITT, Judge.
This appeal arises from an eminent domain proceeding in which the trial court ordered a partial new trial. We have jurisdiction. Fla.R.App.P. 9.110(a)(3).
The Malones owned a parcel of land adjacent to State Road 25 in Dade County. They had constructed thereon a processing plant which converted waste cooking grease into an ingredient used in animal feed. The state Department of Transportation (DOT) condemned the entire ownership for purposes of expanding the road. DOT agreed that the Malones could move their facility to a new site and the parties stipulated as to what items at the old site would be removed.
At trial, the issue of property valuation was bifurcated with separate compensation to be alloted for the movable items and for the remainder of the condemned property. The jury award for the latter, comprising the real property, the shell of the factory building and certain immovables, was $53,690. Concerning the former, an expert was permitted to testify as to the costs involved in relocating the Malones' plant and in putting it back into operation. The jury awarded $170,155 for moving expenses. DOT filed a motion for new trial claiming, inter alia, that the issue of moving costs was improperly presented to the jury. The trial court granted a new trial solely on the issue of moving expenses. The Malones appealed.
Our inquiry begins with Article X, Section 6(a) of the Florida Constitution which provides:
No private property shall be taken except for a public purpose and with full compensation therefor. .. .
Both parties, being aware of Jacksonville Expressway Authority v. Henry G. Du Pree Co., 108 So.2d 289 (Fla. 1958), agree that full *860 compensation contemplates moving costs, but the parties diverge in their suggested applications of Du Pree to the present case. The Malones urge that moving costs include every expense involved in moving their plant to a new location and in making it functional again. These expenses, which are detailed later in this opinion, run from fees for real estate agents to search for a suitable new site to alterations needed to conform the plant to new safety and pollution standards. DOT takes a much more restrictive view of moving costs, as did the trial court after the new trial motion was argued. DOT contends that moving costs involve only the actual expense of physically moving property from one location to another and do not even contemplate costs of reassembly. The parties spent a significant portion of their briefs and oral argument attempting to interpret Du Pree to favor their respective views, but an examination of that case demonstrates that it is not particularly helpful to deciding the one sub judice.
In DuPree, the condemnee received a $110,000 award, including $6,000 for the reasonable cost of moving equipment and supplies to a new location. The equipment and supplies in Du Pree were personal property of the condemnee which could be removed to a new site without any loss in value. Permitting costs for their removal had nothing to do with their valuation. The present case, on the other hand, involves a maze of machinery, part of which was trade fixtures,[1] and the rest of which was so completely integrated as to constitute a single functional unit. To merely take this factory apart and deposit it in another location would nearly destroy its value, especially since it served a unique purpose when assembled.
Although the question is novel in Florida, several other jurisdictions have been faced with the problems that arise from condemnation of properties containing trade fixtures or functional units worth much while in place but worth little when disassembled. These jurisdictions all recognize that in such situations the condemnee must be compensated for the machinery involved in the taking. State v. Gallant, 42 N.J. 583, 202 A.2d 401 (1964); Housing Authority of the Borough of Clementon v. Myers, 115 N.J. Super. 467, 280 A.2d 216 (1971); Rose v. State, 24 N.Y.2d 80, 246 N.E.2d 735, 298 N.Y.S.2d 968 (1969); Schnaible v. City of Bismarck, 275 N.W.2d 859 (N.D. 1979); Gottus v. Redevelopment Authority of Allegheny County, 425 Pa. 584. 229 A.2d 869 (1967). Ordinarily when, as here, the machinery is removed, the amount allowed is the difference between the value of the machinery in place and its salvage value, but in the alternative, the cost of disassembling, trucking and reassembling the machinery may be calculated. When the latter method is used, the amount actually awarded should not exceed the valuation reached under the first method, Housing Authority of the Borough of Clementon v. Myers, 280 A.2d at 223; Rose v. State, 298 N.Y.S.2d at 976, 246 N.E.2d at 740; Schnaible v. City of Bismarck, 275 N.W.2d at 866, the rationale being that the condemnee should not be compensated in a greater amount than the value of the property condemned. We adopt the reasoning of these foreign cases. Thus, a remand is necessary and the jury must be presented with evidence of the value of the Malones' machinery in place as well as its salvage value in order to calculate the upper limit beyond which an award for moving expenses may not rise.
Of course, this disposition does not relieve us of the responsibility of determining whether the moving expense computation itself was based upon proper evidence. That issue was the focus of DOT's new trial motion.
The only testimony on the issue of moving expenses was that of the Malones' expert, Ivan Butler. Mr. Butler testified as to the anticipated total cost of the Malones' *861 relocation based on six cost items. Certain of the costs had already been incurred because the Malones' plant had been dismantled and at least partially trucked away. The remainder were estimated by Butler. His estimates were derived from detailed examinations of the plant while it was functioning, bids received for work to be done and his extensive experience in moving and valuing the cost of moving other industrial plants. His qualifications in this last regard were unassailed and indeed unassailable.
DOT, again relying on DuPree, supra, at 292, argues that the moving costs were speculative because not "definitely ascertained" and that the condemnee's burden of moving costs cannot be proved by mere speculative testimony. In the alternative, DOT argues that the expert's evaluations should have been based on costs as they existed at the time of the taking and not at the time that the costs were or would be incurred.
We cannot agree that the expert's testimony was speculative. Considering that certain phases of the plant's relocation were not completed, the testimony was as reliable as it could be. In other words, the mere fact that some of the move had not yet taken place does not render the expert's cost figures unreliable or speculative. As the Court of Appeals of New York pointed out in Rose v. State, supra, movable machinery may be "valued by determining either the actual or contemplated costs of disassembling, trucking and reassembling the item at a new location." 298 N.Y.S.2d N.Y.S.2d at 976, 246 N.E.2d at 740 (emphasis supplied). The expert's testimony involved computation of actual costs and a reliable estimate of contemplated costs. As such it was not speculative.
The reasoning employed in Rose and the other cases which award moving costs as an element of valuation also disposes of DOT's alternative argument that such costs should be calculated by reference to prices at the time of taking. As stated above, the award is either the actual or contemplated costs of moving on the one hand or the adjusted value of the machinery at the time of taking on the other (with the former figure, if used, not to exceed the latter). The aim is full compensation. Full compensation is not achieved by revaluing the actual cost of moving based on rates on the date of taking. The award should be based on the allowable costs incurred or that will be incurred as long as the move is undertaken seasonably.
Having rejected DOT's objections to the expert's testimony in general, we now proceed to an examination of its specific components. In so doing, we are not unaware that, as DOT argues, certain of the testified-to expenses might be recoverable under the Uniform Relocation Assistance Act, 42 U.S.C. § 4601-4655 (1977) (URAA), and applicable federal regulations.[2]See Robzen's, Inc. v. United States, Department of Housing and Urban Development, 515 F. Supp. 228 (M.D.Pa. 1981). For instance, Cost Items I, III and VI listed below would apparently fall within the URAA's scheme of recovery. See Robzen's, Inc., supra, at 236-39. We nonetheless view the URAA as irrelevant to our determination of the propriety vel non of the submitted cost items. The URAA was intended only as a supplementary measure enabling recovery by displaced condemnees of expenses not otherwise compensable under traditional eminent domain principles of state law. See Robzens, Inc., supra, at 232-33; Division of Administration, State Department of Transportation v. Grant Motor Co., 345 So.2d 843 (Fla. 2d DCA 1977). Thus, our function is to assess the validity of the cost items based solely upon our interpretation of Florida law. These items, presented by Mr. Butler, were as follows:
*862
Cost Item I __________ $120,000.00
To move all of the Malones' processing plant except the land and building and other items which were agreed between the parties to be treated as real estate taken, the processing plant had to be disconnected and dismantled, loaded into trucks and taken to the assumed relocation site; unloaded, put back together, hooked up and put into operating condition by a contractor who did this kind of work.
Cost Item II __________ 3,250.00
Some of the tanks at the old location had special concrete slab foundations directly related to the tank installation and which were not part of the real estate taken nor paid for under the value of the property taken. To reinstall the tanks required the pouring of their concrete foundations directly related to them as a piece of the equipment.
Cost Item III __________ 525.00
Moving the processing plant required that the Malones find a relocation site having the suitable zoning for this operation. They employed the real estate firm of Reiseman and Buckbinder to search for the appropriate site.
Cost Item IV __________ 4,297.00
An architect was employed to prepare the layout drawing of the existing processing plant schematic. This information was necessary in order to develop the written specifications of the work to be done in the dismantling and reassembling of the plant. The cost charged by the architect, J. King McMullen, for this work was $1,184.
Other consultants were hired to give information about the modifications or changes involved in taking things apart and putting them back together. Brent Perry, who gave his time and advice, charged $84.
The firm of Villanueva-Chartrand was employed to study the waste water treatment feasibility of various relocation sites and to study and consult on the reinstallation of that equipment at the relocation site. Waste water treatment to a grease recycling plant is a critical element of environmental concern and regulation that has to be met and which requires special expertise. Mr. Villanueva's charges totalled $3,029 for his work in this connection.
The firm of Ochmanski and Associates were specialists in OSHA requirements for industrial safety. The processing plant had to meet new OSHA requirements when it was moved and reassembled at the relocation site. The expertise and consultation of Mr. Ochmanski was necessary to determine the work necessary to meet the OSHA requirement to reinstall and set up the processing plant at the new location. He charged $400.
Cost Item V __________ 9,800.00
A number of OSHA and environmental regulations and code requirements had been enacted since the Malones' processing plant was constructed. It was "grandfathered in." However, to move the plant and reassemble it elsewhere meant that the reinstallation had to meet these new provisions of the law. Therefore, to accomplish the move made necessary by the taking, the Malones had to install "safety ladders" around the equipment. They had to "color code" the different kinds of pipes. Perimeter earthen dikes around storage tanks were required. Dade County required water conditioning for private water and additional equipment in the treatment of waste water. None of this was required to operate the processing plant at the site taken. But to locate and reinstall the same plant to the same operating function and condition at the new site required that all of these items be provided.
Cost Item VI __________ 32,283.00
The processing plant had to be shut down so that it could be disassembled, moved, reassembled, hooked up and reinstalled to the same function as before. This "down time" was estimated by Ivan Butler to require three months before the plant could again start processing the *863 waste cooking grease which continued to accumulate during the three-month period. Daily collection of the waste grease had to be maintained and the substance stored during the "down time." But grease is perishable  so, in conjunction with the Relocation Department of the Department of Transportation, the idea of cold storage was developed. The method devised was to contain the grease in drums, transport them to cold storage for the "down time" period, transport them out of cold storage and process the accumulated grease in overtime hours to the daily operation when the plant was reinstated and operating again.
Under the reasoning and case law we have espoused, Cost Item I was clearly an appropriate one for valuation by the jury.
As to Cost Item II, the value of the concrete slabs undoubtedly should be part of the compensation award. Realistically, though, the Malones should not be awarded the cost of pouring new ones. This would afford them new slabs and their attendant value instead of the value of old slabs, which is what was taken from them. However, the new slabs were apparently necessitated by the removal of property which the parties specifically agreed was movable. It would have been preferable to value the old slabs as part of the building shell. This was not done and we cannot now broach that portion of the jury's award, the appealed order having limited a new trial to the issue of moving expenses. See Allred v. Chittenden Pool Supply, Inc., 298 So.2d 361 (Fla. 1974); Braddock v. Seaboard Air Line Railroad Co., 80 So.2d 662 (Fla. 1955); Archer-Daniels-Midland Co. v. A. & P. Bakery Supply and Equipment Co., 240 So.2d 73 (Fla. 3d DCA 1970); cert. denied, 244 So.2d 432 (Fla. 1971). Thus, we direct this cost item to be submitted to the jury upon retrial, confident that our previously-discussed limitation upon the moving expense award will prevent any overcompensation.
We hold that Cost Item III is not compensable. Florida law requires that courts take into account all facts and circumstances bearing a reasonable relationship to the loss occasioned an owner by virtue of his property being taken. Behm v. Division of Administration, Department of Transportation, 383 So.2d 216 (Fla. 1980); Jacksonville Express Authority v. Henry G. DuPree Co., supra; Estate of Horowitz v. City of Miami Beach, 420 So.2d 936 (Fla. 3d DCA 1982). Certainly the Malones were required to find a suitable location for their new plant. They were not, however, reasonably required to employ a real estate firm to assist them in this regard.
In contrast was the work performed by the architect whose fee was presented under Cost Item IV. Mr. Butler testified that the layout drawing of the existing processing plant was necessary to its reconstruction. Obviously no one could memorize the complex layout of the plant. Therefore, this portion of Cost Item IV was compensable.
The remainder of the fees under Cost Item IV were not appropriate. These fees were incurred in order to comply with several pollution, health and safety regulations of the state, local and federal governments. Compliance with such "police power" regulations is not compensable under Florida law. Florida East Coast Railway Co. v. Martin County, 171 So.2d 873 (Fla.), cert. denied, 382 U.S. 834, 86 S.Ct. 79, 15 L.Ed.2d 78 (1965). For the same reason, we hold that Cost Item V is not recoverable.
We also reject the expenses claimed under Cost Item VI. The movement and storage of the waste grease itself is related to the "down time" of the plant. As such, it is unrelated to the actual valuation of the plant even under the moving-expense method.
Consequently, upon remand the moving-expense issue must be retried as indicated by the above discussion. To recapitulate, Cost Items III, V and VI shall not be resubmitted to the jury. Cost Item IV is appropriate only insofar as it omits fees incurred from compliance with pollution, *864 health and safety laws or regulations. As to Cost Items I and II, since much of the estimated costs have no doubt already been realized, these items should be resubmitted to incorporate the actual costs. The somewhat repetitious judicial labor involved will be minimal and is justified in the interests of obtaining an accurate award.
The order granting a new trial is affirmed, as modified, and the cause remanded for further consistent proceedings.
NOTES
[1] See Dependable Air Conditioning and Appliances, Inc. v. Office of Treasurer and Insurance Commissioner, 400 So.2d 117, 119 (Fla. 4th DCA), pet. for review denied, 411 So.2d 381 (Fla. 1981).
[2] The URAA is a federally-assisted compensation program which may be invoked when the federal government is involved in a condemnation project. State Road 25, where the subject property is located, is also U.S. Highway 27. It is undisputed here that the Malones are eligible displacees under the URAA.