[837 NYS2d 2]

In the Matter of City of New York, Appellant, Relative to the Melrose Commons Urban Renewal Area, Phase II. Kaiser Woodcraft Corp., Respondent.

First Department, February 20, 2007

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Fred Kolikoff, Lisa Bova-Hiatt* and *Emily Cohen* of counsel), for appellant.

*Goldstein, Goldstein, Rikon & Gottlieb, P.C.*, New York City (*Michael Rikon* of counsel), for respondent.

## OPINION OF THE COURT

Saxe, J.

This appeal raises the question of the types of machinery, equipment, tools and other items installed on business premises that are compensable as trade fixtures in the context of eminent domain.

On July 20, 1998, the City acquired title by eminent domain to the property at 3087 Third Avenue in the Bronx, as part of the Melrose Commons Urban Renewal plan. At the time of the taking, claimant Kaiser Woodcraft was the owner and sole occupant of the property, at which it had operated a woodworking business. In addition to seeking compensation for the taking of the real property itself in the condemnation proceeding, Kaiser made a claim for 147 items it had used in its business, which it characterized as compensable trade fixtures, primarily machines and tools.

Both Kaiser's appraiser and the City's appraiser employed the standard analytical framework, valuing the materials they viewed as trade fixtures on a "sound value" basis, by assigning to each item a reproduction value, from which they deducted depreciation to arrive at a sound value, to which were added percentages for items such as plans and permits, overhead and profits (so-called "soft costs"). However, based upon the experts' differences of opinion as to which items they considered to be trade fixtures, and the appropriate deductions and soft cost percentages, Kaiser's appraiser arrived at a final sound value of $564,270, corrected to approximately $577,000 during his trial testimony, while the final figure arrived at by the City's appraiser was $128,936.

A trial was held before the IAS court, at which Kaiser's principal and both sides' appraisers testified. The court rejected

15 of Kaiser's 147 claimed items as noncompensable, found the remainder of the listed items to be compensable trade fixtures, and as to those remaining items accepted the evaluation of Kaiser's appraiser, awarding Kaiser the sum of $525,000 plus interest.

The City challenges the IAS court's treatment as trade fixtures of (1) various large pieces of machinery and equipment, such as the belt sanders, table saws, planer/jointer machine and drill presses, arguing that these items are movable, of standard design and usable in any woodworking or carpentry operation, (2) portable hand tools and other wall-mounted or table-mounted items that could be used in any woodworking or carpentry operation, which it contends also fall within the category as noncompensable personalty, and (3) items claimed to have merged with the underlying realty. The City also challenges the court's award on the ground that the values assigned the items were incorrect and the sound value improperly calculated.

## Discussion

It is fundamental that an owner whose property has been taken in condemnation is entitled to "just compensation" (US Const 5th Amend; NY Const, art I, § 7 [a]). While the condemnor does not acquire title to mere personalty located on the property, which the former property owner is free to remove, the City does not dispute that the law entitles the property owner to compensation for items such as machinery that meet the definition of "trade fixtures."

"New York takes a broad view in evaluating what improvements are to be regarded as [separately compensable] fixtures" (*Rose v State of New York*, 24 NY2d 80, 86 [1969]). Machinery is

> "deemed a fixture 'where it is installed in such manner that its removal will result in material injury to it or the realty, or where the building in which it is placed was specially designed to house it, or where there is other evidence that its installation was of a permanent nature' " (*id.*, quoting *Matter of City of New York*, 278 NY 276, 281-282 [1938]).

Additionally, the term fixtures includes "those improvements which are used for business purposes and which would lose substantial value if removed" (*see id.* at 86). However, excluded from the category are items that have become an integral part

of the real property (*see Marraro v State of New York*, 12 NY2d 285, 291 [1963]). Such installations as electric wiring and plumbing connections are ordinarily an integral part of the real estate, and therefore not separately compensable, except to the extent installed solely to service fixtures that were specially installed for the occupant's particular purpose (*see id.* at 296-297, citing *Matter of City of New York, supra*).

As the Court of Appeals observed in *Rose*, this formulation of the rules of just compensation for trade fixtures "signifies a recognition of the obvious realities confronting the business community," since "[m]odern business, in order to produce goods and services, invests heavily in cumbersome and complicated machinery which, because of the manner of its installation, can only be removed with difficulty" (24 NY2d at 86).

The courts have repeatedly emphasized that whether a claimed fixture is movable, or removable, is not the applicable criterion (*see Matter of City of New York [Merrimaker Corp.]*, 51 AD2d 147, 149 [1976], *lv denied* 39 NY2d 710 [1976]). " '[A]nnexation, adaptability, and intention of permanence convert machinery into a fixture, regardless of removability' " (*id.*, quoting *Matter of City of New York [Lincoln Sq. Slum Clearance Project]*, 24 Misc 2d 190, 202 [1959], *mod on other grounds* 15 AD2d 153 [1961], *affd* 12 NY2d 1086 [1963]). As Judge Friendly explained in *United States v Certain Prop. Located in Borough of Manhattan, City, County & State of N.Y.* (344 F2d 142 [2d Cir 1965]), even asphalt tiles cemented to the floor by the tenant would only be viewed as having been integrated in the real property, so as to preclude separate entitlement to compensation for their value, "*if the asphalt became the only floor or integral with it,*" but not if the asphalt tiles were "removable without damage to the basic structure" (at 149 [emphasis added]).

With a few exceptions, the items listed in Kaiser's inventory consist of machinery and equipment that were properly deemed compensable trade fixtures based on the testimony of Kaiser's expert, on which the court was entitled to rely. Contrary to the City's contention, these claimed items of machinery satisfied the "annexation, adaptability and permanence" test. They were an integral part of Kaiser's woodworking business, and most of the machines were large, with dedicated electrical lines that had to be installed by an electrician. The premises being small, the machines were arranged in a particular order to mirror the flow of work for

maximum efficiency. Kaiser's expert also testified that these machines would suffer a substantial depreciation in value if removed. The evidence further showed that racks, installed by Kaiser in key places along the flow of work to hold clamps and other items needed during the production process, would have minimal value if removed. Dust collectors were also installed to accommodate numerous machines in the production process and were ancillary to them.

However, we agree with the City that the handheld power tools, included as part of item 22, of standard design although of industrial quality, retained the characteristic of personalty despite their integral role in Kaiser's operation. They were not annexed to the property, the property was not adapted particularly to them, and there was no quality of permanence about their presence.

As to the City's claim that various claimed items had become an integral part of the building and therefore are not separately compensable, we agree with the City that portions of items 1, 2 and 3, specifically, the concrete blocks and related items that were used to form the outer wall of the building itself in place of windows that were removed due to security concerns, merged with the building and are not separately compensable. The custom-made front door is also such an item. Although it was specially designed and installed in order to accommodate large items used in Kaiser's business, and was "used for business purposes and . . . would lose substantial value if removed" (see Rose, 24 NY2d at 86), nevertheless its identity necessarily merged with the building when it was installed as a structural part of the building, losing its separate identity as a fixture (see Marraro, supra).

The door installed by Kaiser here cannot be equated with a drop ceiling or with tiles installed on top of permanent flooring; the door is, by nature, an essential, integral part of the building's essential structure. As such, it cannot properly be categorized as a compensable trade fixture.

Additionally, while the trial court correctly treated certain aspects of the electrical system as trade fixtures, the building's basic electrical wiring cannot properly be classified as a trade fixture (see Marraro, 12 NY2d at 296). While electrical components particular to the business's specialized electrical fixtures and fluorescent lighting are properly considered trade fixtures (id. at 296-297), certain parts of the main service panel (item 89) and the fused distribution panel on the first floor (item 146) are noncompensable basic electrical wiring.

We reject Kaiser's argument that *Whitehall Corners v State of New York* (210 AD2d 398 [1994]) eliminated the concept that fixtures can merge with the underlying real property. There, the tenant of condemned property made a claim for floor tiles, paneling, ventilation and air conditioning equipment, bathroom fixtures such as sinks and toilets, and a circuit breaker panel, and the State argued that these fixtures lost their separate identity when installed. The Court found that the contested items did not lose their separate identity, but only after noting that it was undisputed that the items were understood to remain the tenant's property upon the termination of the lease. Therefore, the items in *Whitehall Corners could not have* merged with the underlying building, and the holding in *Whitehall* did not invalidate the concept of fixtures losing their separate identity by merging with or becoming integral parts of the underlying real property.

Finally, we reject the City's challenge to the manner in which the amount awarded by the trial court was calculated. Its adoption of the total sound value for the compensable items provided by Kaiser's expert rather than the City's expert, plus the expert's "soft" costs calculations, was proper (*see Matter of City of New York [Salvation Army]*, 43 NY2d 512, 516 [1978]).

We have considered the City's remaining arguments and find them unavailing.

Accordingly, the seventh separate and partial final decree of the Supreme Court, Bronx County (Howard R. Silver, J.), entered on or about September 2, 2005, which awarded claimant the sum of $525,000, with interest, as just compensation for its trade fixtures, should be modified, on the law and facts, to the extent of remanding the matter for deduction from the award of the sound value of the handheld power tools listed within item 22, the concrete blocks listed in items 1, 2 and 3, and item 5, the custom-made front door, and for a further determination of the value of the noncompensable components of the building's basic electrical system, which is also to be deducted from the award, and otherwise affirmed, without costs.

MAZZARELLI, J.P., MARLOW, SULLIVAN AND WILLIAMS, JJ., concur.

Seventh separate and partial final decree of the Supreme Court, Bronx County, entered on or about September 2, 2005,

modified, on the law and facts, to the extent of remanding the matter for certain deductions from the award and components of the building's basic electrical system, and otherwise affirmed, without costs.