■ In the Matter of VILLAGE OF PORT CHESTER. MEGAMAT LAUNDROMAT, INC., Respondent-Appellant; VILLAGE OF PORT CHESTER, Appellant-Respondent. [839 NYS2d 218]—

In a condemnation proceeding, the condemnor Village of Port Chester appeals from a judgment of the Supreme Court, Westchester County (Rosato, J.), dated November 16, 2005, which, upon a decision entered October 17, 2005, after a nonjury trial, is in favor of the claimant Megamat Laundromat, Inc. and against it in the principal sum of $993,921, and the claimant Megamat Laundromat, Inc. cross-appeals from the same judgment on the ground of inadequacy.

Ordered that the judgment is reversed, on the law and the facts, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for a recalculation and new determination of just compensation in accordance herewith.

The condemnor the Village of Port Chester obtained title by eminent domain to a parcel of property where the claimant Megamat Laundromat, Inc. operated a laundromat. The claimant filed a claim for compensation for trade fixtures located in the laundromat on the property. After a bench trial, the court determined that the claimant was entitled to an award of $1,104,026, representing the current sound value of the items it deemed to be compensable trade fixtures, less the sum of $110,105, representing the advance payment the condemnor had previously remitted to it.

Providing compensation to a trade-fixture owner, who is a tenant on condemned property, is in derogation of the common law which provides that government taking of real property encompasses the land and everything annexed thereto, including trade fixtures (see Marraro v State of New York, 12 NY2d 285, 293 [1963]). Under the trade-fixture rule, a claimant is entitled

to compensation for trade fixtures it has a right under its lease to remove, but chooses not to remove (*id.* at 292-293; *cf. Interlake Serv. Sta. v State of New York,* 249 AD2d 275, 276 [1998]). Such compensation is intended to provide just compensation to the claimant, not a windfall (*see Rose v State of New York,* 24 NY2d 80, 90 [1969]; *Town of Cheektowaga v Starlite Bldrs.,* 247 AD2d 933, 934 [1998]). Specifically, the trade-fixture owner is entitled to the current sound value (hereinafter CSV) of the trade fixture at the time of vesting (*see Matter of City of New York [Glantz],* 55 NY2d 345, 351 [1982]; *Matter of County of Nassau [Ruthizer],* 149 AD2d 701, 702 [1989]; *Matter of City of New York,* 57 AD2d 954, 955 [1977]).

For an item to qualify as a trade fixture, it must pass the three-part test of annexation, adaptability, and intention of permanency (*see Rose v State of New York, supra* at 86; *Marraro v State of New York, supra* at 292-293; *Matter of City of New York [Kaiser Woodcraft Corp.],* 39 AD3d 131 [2007]; *Matter of New York City Tr. Auth. [Superior Reed & Rattan Furniture Co.],* 160 AD2d 705, 706 [1990]; *Matter of City of New York [Merrimaker Corp.],* 51 AD2d 147, 149 [1976]). A relatively recent criterion also includes as trade fixtures those "items that would lose substantial value if removed even though readily removable" (*Matter of City of New York [Merrimaker Corp.], supra* at 149).

The trial court correctly classified the claimant's washers, dryers, and extractors (hereinafter collectively the laundry machines) as compensable trade fixtures. The record establishes that relocation of the laundry machines, even if performed properly, would damage the mechanics of the machines and cause them to lose at least 80% of their value (*see Matter of City of New York [Merrimaker Corp.], supra* at 149). The Village submitted no evidence to the contrary. Both *Matter of City of New York (Quick Serv. Laundry)* (48 AD2d 634 [1975]) and *Belinky v State of New York* (24 AD2d 908 [1965]) are distinguishable since the record in both of those cases did not indicate that removal of the laundry machines would render them useful only as salvage. Further, the record herein demonstrates that the laundry machines satisfied the three-part test for trade fixtures (*see Marraro v State of New York, supra* at 293).

The court's total CSV award to the claimant, which was nearly twice the original cost to the claimant for constructing and equipping the entire laundromat in November 1997, constituted a windfall. " '[T]he purchase price set in the course of an arm's length transaction of recent vintage, if not explained away as abnormal in any fashion, is evidence of the 'highest rank' to determine the true value of the property at that time' "

(*Matter of Reckson Operating Partnership v Assessor of Town of Greenburgh*, 289 AD2d 248, 249 [2001], quoting *Plaza Hotel Assoc. v Wellington Assoc.*, 37 NY2d 273, 277 [1975]). Here, the claimant provided only unsubstantiated assertions that its original expenses in constructing and equipping the laundromat were "abnormal."

The court further erred in awarding the claimant a current reproduction cost (hereinafter CRC) of $6,000 on item 85 (steam presser), as the claimant had conceded that the correct CRC was only $795, representing its installation expenses. Additionally, the record indicates that the 10 television sets and the satellite dish were not trade fixtures, and accordingly, the court erred in deeming those items to be compensable (*see Rose v State of New York, supra* at 86; *Marraro v State of New York, supra* at 293; *Matter of City of New York [Quick Serv. Laundry], supra; Belinky v State of New York, supra*).

The court correctly declined to deem compensable the 25 steel pillars which the claimant had installed in the basement as support for the concrete bases installed under the washers and extractors. However, the court erred in deeming compensable the concrete bases themselves on the ground that they were necessary for the operation of those machines.

The parties' remaining contentions are without merit. Crane, J.P., Krausman, Lifson and Balkin, JJ., concur.