(101 App. Div. 527.)

## In re CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 10, 1905.)

1. FIXTURES—LANDLORD AND TENANT.

    Refrigerating machinery, boilers built into a building, electric wiring, pipes, etc., to conduct electricity and gas from one part of the building to another, were a part of the realty after installation, and not fixtures, as between landlord and tenant, though they could have been pulled out on termination of the lease without materially injuring the building.

    [Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Fixtures, §§ 26–29, 31.]

2. SAME—CONDEMNATION PROCEEDINGS—DAMAGES.

> In a proceeding to condemn certain rented property for public use, the tenants, who were entitled to remove trade fixtures therein, consisting of refrigerators, boilers, etc., were not entitled to the value of such fixtures, based on the cost of installing, less the depreciation by use during the time they had been in use, but were only entitled to the value of their right to remove the same at the termination of the lease.

Appeal from Special Term.

Application by the city of New York to acquire title to certain property in such city between Bloomfield and Little West Twelfth streets. From an order confirming a report of the commissioners of estimate and assessment awarding damages for property taken, the owner thereof appeals. Modified.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

David Gerber, for appellant.
William H. Harris, for respondents.

INGRAHAM, J. This is a dispute between the owner of certain property, the title to which has been acquired by the city of New York in this proceeding, and certain tenants in possession of a portion of said property. The appellant, John Glass, was the owner of the premises in question, which at the time of the institution of this proceeding were in possession of the tenants—the respondents Conron Bros. being in possession of the premises known as No. 7 on the damage map, under a lease dated May 1, 1896, for ten years, at an annual rental of $3,000 a year; the premises known on the damage map as No. 9 being in the possession of the respondent T. H. Wheeler Company, under a lease dated May 1, 1896, for ten years, at an annual rental of $4,400; the premises No. 8 on the damage map being in the possession of Armour & Co., under a lease dated November 1, 1891, at an annual rental of $2,500; and the property No. 12 on the damage map being in the possession of the Metropolitan Hotel Supply Company, under a lease dated March 1, 1896, for seven years and two months, at an annual rental of $2,750. The commissioners awarded for the property taken $1,155,129.78. To this award as the total value of the property no objection was taken. The commissioners awarded to the lessees of plot No. 7, Conron Bros., for the value of their leasehold, the sum of $5,014.60, and also awarded to Conron Bros., for "fixtures not so attached as to have become property of the owner of the land," the sum of $30,000. The commissioners awarded to Armour & Co., as lessees of plot No. 8, for "fixtures not so attached as to have become the property of the owner of the land," $3,500. The commissioners awarded to the T. H. Wheeler Company, as lessees of plot No. 11, for the value of their leasehold, the sum of $4,763.87, and also to the T. H. Wheeler Company, for "fixtures not so attached as to have become the property of the owner of the land," $4,150. And they awarded the Metropolitan Hotel Supply Company, tenants of plot No. 12, for "fixtures not so attached as to have become the property of the owner of the land," $4,000. The commissioners

also made an award, for "fixtures so attached to the structure of the property as to have become the property of the owner of the land, to the owner, John Glass," of $11,281.98.

Upon this report coming on for confirmation at a Special Term of the Supreme Court, it was confirmed in all respects, except as to these awards for fixtures, and as to them the report was confirmed so far as the city of New York was concerned; but the report was not confirmed so far as the ownership of the fixtures was concerned, or the right to such award, and the objection of the parties as to such ownership was reserved for the further decision of the court. By a subsequent order of the court entered on the 25th day of May, 1904, the question reserved in the original order was determined, and the said report was confirmed so far as it awarded to the T. H. Wheeler Company for fixtures the sum of $4,150, and to John E. Conron and Joseph Conron, composing the firm of Conron Bros., for fixtures, the sum of $30,000; but the award to John Glass, the landlord, for the sum of $7,500 for fixtures, was not confirmed, and the report in that particular was sent back to the commissioners for correction, and from that order the landlord, John Glass, appeals. Thus, the value of the property taken by the city, including what is designated "fixtures," and for which the city was to pay, was settled by these orders, and from that determination no appeal is taken.

The value of the property thus acquired by the city being fixed, the question to be determined was, who is entitled to the money to be paid by the city for the property acquired? The commissioners ascertained and determined the value of the leases, and for that they made an award to the lessees. The amount of that award is not disputed. At the same time they valued certain improvements upon the demised premises. The amount of that award is not disputed, but the question is whether it should be paid to the landlord or to the tenants. The leases under which these tenants held possession were introduced before the commissioners. The lease to Conron Bros. was dated January 21, 1896, and was for ten years from May 1, 1896, at an annual rental of $3,000. The tenant covenanted to keep the premises in repair, and at the expiration of the term to deliver up the demised premises in good order and condition. There was no covenant by which the tenant could remove any buildings or other improvements that he had placed upon the premises. The lease by the landlord to the T. H. Wheeler Company, dated in February, 1896, was for ten years from the 1st of May, 1896, at an annual rental of $4,400, the tenant to keep the premises in repair, but the fixtures "put in by the said tenant belong to and are the property of said tenant, and he may remove the same at the expiration of this lease; but the premises shall be left the same as found, and at the end or other expiration of the term he shall deliver up the said demised premises in good order or condition, damages by the elements excepted." The lease under which the Metropolitan Hotel Supply Company held was dated March 6, 1896, was for a term of seven years and two months from March 1, 1896, and contained the same covenants as to repairs, but no

covenant authorizing the tenant to remove any buildings or improvements placed upon the property. The lease to Armour & Co. was dated October 19, 1891, was for a term of ten years from the 1st of November, 1891, at an annual rental of $2,500, and contained the same covenant as to repairs, with no clause in the lease allowing the tenant to remove any fixtures or other structure placed upon the property during the term. Under these leases the tenants made certain alterations and repairs in the buildings upon the demised premises necessary to adapt the premises to the use to which they were to be put, but it is quite clear from the testimony that the right to remove this property by the tenants would have been of little, if any, value. Thus, Mr. Wheeler, testifying as to the property that was put in by the Wheeler Company, stated generally that an icebox for which he made a claim could be taken out, but that it would then be mere lumber, and it would be impossible to restore it to the same condition in any other place; and that various partitions and pipes could be taken out without materially injuring the building, but there was no evidence to show that after they had been taken out they would be of any substantial value. The testimony on behalf of the tenants Conron Bros. was that they were in the wholesale poultry and game business, that they installed a cold storage plant to supply cold storage for themselves and others, and that they supplied this cold storage, electric light, and steam for the tenants of the block. One witness described the improvement that they made on the building:

"Beginning at the cellar, the cellar was concreted when we went in there. We had to take and pitch the walls and the cellar. Then we started to build our icehouses and freezers, comprising the air space, with so many boards and paper, comprising, I suppose, what you would call so many houses in one, with cross-partitions and doors from place to place."

He further testified that he built the fixtures on the first floor; that they had to calk the floors and put asphalt on the first floor, covering the whole space used by the coolers outside of the office, and then put in ice machines and boilers; that in the basement of Bloomfield street they put ice tanks for making ice, and elevator for engine, and also put an elevator there and different apparatus necessary for their business, piping, etc.; that the elevator runs from the basement to the second story; that upon the second story they had what they called a "mezzanine floor"; that they put the freezers on the same floor, and insulated them thoroughly; that these rooms were all piped for the different temperatures required; that in the front part of the building they made an office and equipped the place with the usual trade fixtures; that they also put electric wires throughout the building; that they had two tubular boilers, two ice machines, also duplicate pumps, two dynamos, two engines, switch board, and all the necessary equipment to run a cold storage plant. They also established pipes through the different portions of the block going to their other customers. An expert witness gave a detailed description of the machinery and fixtures installed by Conron Bros. He estimated the value of the fixtures, as new materials, at $75,487.69, which, with a depreciation

of $11,323.15, made the property that he found there of the value
of $64,164.54; but he testified that the most of this property, taken
out of this building, would be of no value, the cost of removal
equaling the value of it as old material.    The machinery he esti-
mated as of the value of $3,000 as secondhand machinery.  The tes-
timony in regard to the fixtures of the other tenants was substan-
tially the same.

All of the machinery and other appliances installed by these ten-
ants was valuable only to the tenants in the buildings, and, de-
tached from the buildings or removed, they were of little value.
An examination of the testimony also shows that this machinery,
electric wiring, pipes, and refrigerating machinery were all a part
of the buildings.  It does not require an expert to show that a pipe
to conduct water or gas from one part of a building to another, or
wires to conduct electricity, which are built into the premises, be-
come a part of the building; and while it may be that they could
be pulled out without materially injuring the building, the very
method by which they are annexed to the building makes them a
part of it, rendering them valueless except for a use connected with
the building.    I think it clear that generally all of such installation
becomes a part of the realty, and that, even as between landlord
and tenant, the tenant would not have the right, at the expiration
of his lease, to remove what has become a part of the building it-
self; but, as between this landlord and his tenants, the right of the
tenants to these fixtures was, apart from the use in connection with
the building during the balance of the term demised, solely that of
a right to remove at the expiration of the term such portion of the
machinery as had not become a part of the realty.    This, so far as
I can judge from this testimony, is confined to a few machines and
steam engines and things of that character, which could be taken
out without injury to the building.    I do not think that boilers built
into the walls, and which could only be removed by tearing them
down, are trade fixtures that can be removed by a tenant; and as
between landlord and tenant, as I view it, all the interest that the
tenant has at the expiration of his lease is the right to remove such
of the property as he has placed upon the demised premises which
are trade fixtures; and, upon the property being taken for public
use, he has the right to have the value of his lease, and also the
value of this right to remove these trade fixtures at the expiration
of his lease.    He would then receive full compensation, if he were
paid the value of the property that he has the right to remove after
it is severed from the property.    He certainly has not the right, as
against his landlord, to have a value fixed upon such property based
upon what it would cost to install it, with a depreciation of its use
during the time that it has been in use.

As I read this testimony, there is no evidence to justify any
award to the Metropolitan Hotel Supply Company or to Armour
& Co. for these trade fixtures, and I think the commissioners were
entirely right in refusing to make any award to them.    My conclu-
sion is the same as to the Wheeler Company.  There is no evidence
to justify a finding that it had the right to recover anything that it

had added to this building or erected upon the demised premises. It is true, its lease contains a provision allowing it to remove fixtures, but that permission does not enlarge the right that it would have at law to remove what it had placed upon the premises and which had not become actually a part of the realty. As to Conron Bros., it would appear that some of the machinery was taken which would have had a value after it was removed, and for which they were entitled to an award, but certainly the award that was made was much in excess of any property rights that they had, or of the fair value of any property that they had a right to remove.

My conclusion is that the order appealed from, so far as it refused to confirm the report as to the award made to Armour & Co. and the Metropolitan Hotel Supply Company, should be reversed, and the report confirmed; that as to the Wheeler Company the order appealed from should be reversed, and the matter sent back to the commissioners with directions to award the value of the fixtures described in the report as property detached from the freehold; and that in relation to Conron Bros. the order appealed from should be reversed, and the matter sent back to the commissioners to make an award to them for the property taken by the city belonging to them, which they had a right to remove, and which value should be based upon the value of the particular property after it had been detached from the building at the expiration of the term demised; the appellant to have costs of this appeal against the respondents. All concur.