[856 NYS2d 378]

In the Matter of USA NIAGARA DEVELOPMENT CORPORATION, Respondent, Relative to Acquiring Title in Fee Simple to Certain Property Necessary for a Project Known as the NIAGARA FALLS CONVENTION AND CONFERENCE FACILITY CIVIC PROJECT. SETTCO, LLC, Appellant.

Fourth Department, April 25, 2008

## APPEARANCES OF COUNSEL

*Goldstein, Goldstein, Rikon & Gottlieb, P.C.*, New York City (*Michael Rikon* of counsel), for appellant.

*Nixon Peabody LLP*, Buffalo (*Laurie Styka Bloom* of counsel), for respondent.

## OPINION OF THE COURT

Smith, J.

In this appeal, we are asked to determine whether Supreme Court properly denied the trade fixture claim of claimant, Settco, LLC (Settco). The claim involves a 3.152-acre parcel of property improved by an approximately 113,500-square-foot, single-story building, formerly known as the "Falls Street Faire," in the City of Niagara Falls. The original developers of the property envisioned a building that would be a combined indoor amusement park, retail mall and entertainment facility, and they hired a renowned amusement park architect to design it. The building opened on July 1, 1991, at which time the food court was open and the amusement rides were operating, but less than half of the retail spaces were rented. Those vacant retail spaces were never leased, and the entire building was closed on January 6, 1992. Over the ensuing 10 years, the owners of the property attempted to market it to numerous prospective buyers in accordance with the original design concept, but were unable to consummate a sale. Settco, one of the owners, obtained sole title to the property in October 2001.

Also in 2001, the former City of Niagara Falls convention facility was sold and converted for use as a gambling casino to be operated by the Seneca Nation of Indians (*see generally* L 2001, ch 383, part B). In order to create a new convention facility, respondent, USA Niagara Development Corporation (USA Niagara), acquired title to Settco's property by eminent domain on July 22, 2003. Settco then commenced this proceeding seeking damages for the condemnation of the property, including the value of the fee and $20,000,000 for trade fixtures in the building. Supreme Court bifurcated the claim for compensation for the value of the fee from the trade fixture claim and, on a prior appeal, we affirmed an order awarding $5,107,500 for the value of the fee (*Matter of USA Niagara Dev. Corp. [Settco, LLC]*, 32 AD3d 1169 [2006]).

As of the date of taking, all but one of the amusement rides had been removed from the building, and the remaining items in the building were in a state of near-total disrepair. The record establishes that birds had nested in the heating units and that none of the air-conditioning units was functioning. There were pools of standing water in the building and, consequently, there was significant mildew and mold on the interior surfaces. Many windows were broken, and roofing materials and debris were scattered throughout the building. A number of cats had taken up residence in the building, and they were using a sand pit inside the building as a litter box. No business had been conducted in the building for at least a decade prior to the taking.

The notice of trade fixture claim with schedule included a list of 373 items that Settco contended were trade fixtures for which it was entitled to compensation. With the exception of the central electrical, plumbing and sewer connections, Settco classified everything in the building as trade fixtures, including, inter alia, the building's remaining interior HVAC equipment, electrical and plumbing systems, the interior storefronts, and the accompanying masonry and structures. In opposition to the claim, USA Niagara contended that the 373 items were not compensable trade fixtures because they were not used in a trade or business at the time of the taking. The parties were unable to agree on whether any of the items were compensable trade fixtures, and thus the court conducted a 13-day hearing on that issue as well as on the issue of the amount of compensation that should be awarded for any of the items determined by the court to be trade fixtures. After each party presented expert testimony and other evidence in support of its position, including its valuation of the items, the court determined that none of the items was a compensable trade fixture and denied the claim.

We begin our analysis with the proposition that "[i]t is constitutionally mandated that the sovereign will pay just compensation for property it takes by its powers of eminent domain. 'Just compensation is properly measured by determining what the owner has lost' " (*Matter of City of New York [Glantz]*, 55 NY2d 345, 351 [1982], quoting *Rose v State of New York*, 24 NY2d 80, 87 [1969]). Compensation for trade fixtures "is intended to provide just compensation to the claimant, not a windfall" (*Matter of Village of Port Chester*, 42 AD3d 465, 467 [2007]). As previously noted, we determined on a prior appeal that Settco received full value for its fee title to the property as

improved by the building at the time of the condemnation (*USA Niagara Dev. Corp.*, 32 AD3d 1169 [2006]). Contrary to the contention of Settco, the court properly denied its claim for further compensation for the items in the building because they were not compensable trade fixtures.

> "New York takes a broad view in evaluating what improvements are to be regarded as fixtures. . . . [M]achinery [is] deemed a fixture 'where it is installed in such [a] manner that its removal will result in material injury to it or the realty, or where the building in which it is placed was specially designed to house it, or where there is other evidence that its installation was of a permanent nature' " (*Rose*, 24 NY2d at 86).

The term also includes, however, "those improvements which are used for business purposes and which would lose substantial value if removed" (*id.*). Settco correctly concedes that the items at issue do not fall within the first three categories of trade fixtures. Thus, the sole issue before us is whether any of the 373 items qualify as improvements used for business purposes that would lose substantial value if removed. We agree with USA Niagara that the record before us establishes that none of the items was used for business purposes at or near the time of the taking.

In early condemnation cases, the sovereign was required to reimburse the owner for the value of the fee, as improved by the items affixed to the realty at the time of the taking (*see e.g. Schuchardt v Mayor, Aldermen & Commonalty of City of N.Y.*, 53 NY 202, 209-210 [1873]; *see also Allen v City of Boston*, 137 Mass 319, 321 [1884]). The value of any item that was annexed to the realty was subsumed within the value of the fee, while any item that could be removed was treated as personalty that the owner was required to remove (*see Matter of City of New York*, 196 NY 255, 259-260 [1909]). Courts subsequently came to recognize that, pursuant to those prior decisions, a business owner was deprived of the value of the items that were necessary to the operation of his or her business and could result in the destruction of the business itself. Although machinery and other trade fixtures affixed to realty might have little or no value if removed and offered for sale, businesses were often required to invest substantial resources to obtain and install them, and they were often almost impossible to remove (*see generally Matter of City of New York*, 101 App Div 527, 530-533

[1905], *affd* 182 NY 281 [1905]). In such an instance, the business owner would suffer a significant loss if awarded compensation only for the value of the fee on the open market. Furthermore, tenants, particularly long-term industrial manufacturing tenants, would sustain large losses in those cases, because their trade fixtures either would become part of the fee, the value of which would inure to the benefit of the owners, or would be lost in the condemnation procedure. Consequently, the courts began to require governmental agencies that condemned property to provide just compensation to owners or tenants whose trade fixtures necessary to the operation of their businesses were lost in those condemnation proceedings (*see e.g. Matter of City of New York*, 256 NY 236, 246-249 [1931]).

Such a situation existed in the seminal case of *Rose v State of New York*, in which the State of New York relocated the Chenango River, depriving the claimant of the use of his riparian rights. Although the claimant in that case was not deprived of the use of the land and therefore the diminution in value of the fee was relatively minor, the claimant was denied access to the 800,000 to 1,000,000 gallons of water that he required on a daily basis to run his sand, gravel and concrete businesses, which effectively destroyed the utility of the machines that he used to conduct business (*see* 24 NY2d at 82-83). Based on the enormous size of the machines involved, it was not cost-effective to move them. Furthermore, it would have taken a lengthy period of time to move the machines to a new location and set them up in a new building, during which time the claimant would be unable to keep his businesses in operation and thus would lose customers. The Court of Appeals concluded that an award for the diminution in the fee did not adequately compensate the claimant for the business loss caused by the taking, and the Court held that the claimant was entitled to compensation for the loss of his trade fixtures, to be calculated as the lesser of the cost of moving the fixtures or the difference between salvage and reproduction cost less depreciation (*see id.* at 89-90).

Here, Settco failed to establish that it sustained any business loss with respect to the items for which it sought compensation by notice of trade fixture claim, or that it sustained any loss that was not adequately compensated by the value of the fee. Settco had never conducted any trade or business in the building, and no one had conducted business there in more than a decade. The difference between compensable trade fixtures and

those fixtures that comprised mere "noncompensable inutile capacity" has long been settled (*Matter of City of New York*, 15 AD2d 153, 176 [1961], *affd* 12 NY2d 1086 [1963], *affd* 16 NY2d 497 [1965], *rearg denied and mot to amend remittitur granted in part* 16 NY2d 828 [1965]). In that case, a claimant was awarded compensation for ice-making tanks and equipment that were operating at the time of the taking but was denied compensation for similar equipment that had not been used for several years (*see id.* at 176-178). More recently, the Second Department held that the laundry machines affixed to realty in a commercial laundry were properly classified as compensable trade fixtures, but that the television sets and a satellite dish in the same establishment were not used for the operation of the trade or business and thus were not trade fixtures (*see Village of Port Chester*, 42 AD3d at 467-468).

With respect to Settco's claim for compensation for the HVAC equipment and electrical and plumbing systems, we note that such installations are ordinarily an integral part of the realty and therefore are not separately compensable except to the extent that they were installed specifically for the occupant's particular business purpose (*see Marraro v State of New York*, 12 NY2d 285, 296-297 [1963]; *Matter of City of New York [Kaiser Woodcraft Corp.]*, 39 AD3d 131, 133-134 [2007]). Settco failed to establish that it conducted any business on the property, and thus it failed to establish that the above-referenced items were specifically installed for its business purposes. In addition, Settco failed to establish that its business plan required that it hold in reserve any of the items for which it sought compensation, and thus it failed to establish that those items were required to maintain readiness to conduct its business (*cf. Matter of Mayor*, 39 App Div 589, 592 [1899]).

Accordingly, we conclude that Settco's claim for trade fixtures was properly denied and that the order therefore should be affirmed.

HURLBUTT, J.P., MARTOCHE, LUNN and PERADOTTO, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.