Matter of Village of Haverstraw v Ray Riv. Co., Inc. (2021 NY Slip Op 08191)





Matter of Village of Haverstraw v Ray Riv. Co., Inc.


2021 NY Slip Op 08191


Decided on February 24, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 24, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
LEONARD B. AUSTIN
HECTOR D. LASALLE
VALERIE BRATHWAITE NELSON, JJ.


2017-11592
2018-00567
 (Index No. 8853/07)

[*1]In the Matter of Village of Haverstraw, appellant-respondent;
v
Ray River Co., Inc., et al., respondents-appellants.


Zarin & Steinmetz, White Plains, NY (David J. Cooper and Zachary Mintz of counsel), for appellant-respondent.
Goldstein, Rikon, Rikon & Houghton, P.C., New York, NY (Jonathan Houghton and Ashley Levi of counsel), for respondents-appellants.



DECISION & ORDER
In a claim pursuant to EDPL article 5 for compensation arising from the condemnation of real property, the condemnor, the Village of Haverstraw, appeals, and the claimants cross-appeal, from (1) an order of the Supreme Court, Rockland County (Bruce E. Tolbert, J.), entered October 2, 2017, and (2) a judgment of the same court dated November 30, 2017. The order, made after a nonjury trial, awarded the claimants $8,950,000 as just compensation for the taking of their real property. The judgment, upon the order, is in favor of the claimants and against the Village of Haverstraw in the principal sum of $6,810,000.
ORDERED that the appeal and the cross appeal from the order are dismissed, without costs or disbursements; and it is further,
ORDERED that the judgment is reversed, on the law and the facts, without costs or disbursements, the order is vacated, and the matter is remitted to the Supreme Court, Rockland County, for further proceedings in accordance herewith.
The appeal and the cross appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal and the cross appeal from the order are brought up for review and have been considered on the appeal and the cross appeal from the judgment (see CPLR 5501[a][1]).
On March 27, 2008 (hereinafter the vesting date), the Village of Haverstraw condemned a parcel of real property owned by the claimants located at 30 Liberty Street in Haverstraw, Rockland County (hereinafter the subject property). The claimants thereafter filed a claim against the Village for just compensation seeking direct damages for the loss of the subject property. At a nonjury trial on the issue of just compensation, the parties' experts agreed that the highest and best use for the subject property was for a multifamily dwelling complex, and they both utilized the sales comparison method to derive a value for the subject property based on the same [*2]five comparison sales. The parties' experts differed, however, on how many units such a development would need to constitute the highest and best use for the subject property. They also disagreed as to the appropriate adjustments to apply in order to determine a value for the subject property. The claimants ultimately sought $13,100,000 in damages, representing the value of a 131-unit condominium configuration at $100,000 per unit. The Village proposed damages of $2,140,000, that being the difference of their 80-unit townhouse configuration at $50,000 per unit, less certain alleged extraordinary construction costs.
In an order entered October 2, 2017, the Supreme Court awarded the claimants the principal sum of $8,950,000 as just compensation for the taking of the subject property. A judgment dated November 30, 2017, was entered in favor of the claimants and against the Village in the principal sum of $6,810,000. The Village appeals, and the claimants cross-appeal.
"In condemnation cases, the authority of this Court to review findings of fact after a nonjury trial is as broad as that of the trial court" (Matter of Mazur Bros., Inc. v State of New York, 97 AD3d 826, 828). "This court 'may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses'" (id. at 828, quoting BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp., 89 AD3d 883, 884).
"The measure of damages in a condemnation case 'must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d 1087, 1088, quoting Chester Indus. Park Assoc., LLP v State of New York, 65 AD3d 513, 514 [internal quotation marks omitted]; see Chemical Corp. v Town of E. Hampton, 298 AD2d 419, 420). "The determination of highest and best use must be based upon evidence of a use which reasonably could or would be made of the property in the near future" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1088; see Matter of City of New York [Broadway Cary Corp.], 34 NY2d 535, 536).
"'In determining an award to an owner of condemned property, the findings must either be within the range of expert testimony or be supported by other evidence and adequately explained by the court'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1089, quoting Matter of City of New York [Reiss], 55 NY2d 885, 886; see Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.], 102 AD3d 787, 790). "Where the parties offer inconsistent highest and best uses and their experts appraise only their own proposed uses, the award must be based upon the evidence offered by the party prevailing on the use question 'with such adjustments as the evidence will support'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1089, quoting Crosby v State of New York, 54 AD2d 1064, 1065; see Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d 654, 655-656).
Here, although it fell within the range of testimony offered by the parties' experts, the Supreme Court's utilization of a 100-unit multifamily dwelling as the highest and best use for the subject property was not supported by the record. The Village's evidence demonstrates that a 100-unit configuration is less profitable than others described in the record due to the costlier materials required under the New York State Building Code to build a structure tall enough to include that many units.
In place of the Supreme Court's determination, the claimants argue that their mix of 131 one- and two-bedroom units constituted the highest and best use for the subject property because that configuration utilized the maximum number of units permitted under the applicable zoning code. The claimants' exhibits, however, include no data or other factual matter substantiating their expert's position that this proposal would be profitable solely due to what he described as high demand and high absorption rates for residential properties along the Hudson River. The claimants' experts admitted at trial that they did not consider construction costs in determining whether a 131-unit residential development would be financially feasible. The claimants thereby failed to demonstrate that their proposed use was financially feasible, and thus, the highest and best use for the subject property (see Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 139 AD3d 863, 866-868). [*3]By contrast, the Village's appraiser opined that his 80-unit townhouse configuration avoided the additional costs associated with the claimants' proposal, which included a fifth floor and subgrade parking facilities. In his report, the Village's appraiser, among other things, compared the cost per square foot to develop and construct a variety of five-story high rises with four-story high rises and townhouses at the subject property. The appraisal includes exhibits detailing the construction and development costs underlying his analysis. In addition, and contrary to the claimants' assertion, the parties' comparable sales show that there was a demand for townhouse units at the time of the vesting date. The record thereby establishes that the Village's 80-unit townhouse configuration constitutes the highest and best use of the subject property.
Turning to valuation, "the rule has evolved that the purchase price set in the course of an arm's length transaction of recent vintage, if not explained away as abnormal in any fashion, is evidence of the 'highest rank' to determine the true value of the [condemned] property" (Plaza Hotel Assoc. v Wellington Assoc., 37 NY2d 273, 277, quoting Matter of F.W. Woolworth Co. v Tax Commn. v City of N.Y., 20 NY2d 561, 565; see Matter of Western Ramapo Sewer Extension Project, 120 AD3d 703, 704). To rebut evidence of this kind, an opponent must "demonstrate that the transaction was 'abnormal' or was not an 'arm's length transaction'" (Matter of Western Ramapo Sewer Extension Project, 120 AD3d at 704, quoting Plaza Hotel Assoc. v Wellington Assoc., 37 NY2d at 277). Here, the Supreme Court providently declined to afford any weight to a contract of sale for the subject property dated July 19, 2006. The timing and structure of the contract of sale, coupled with the purchaser's own admission at trial that he conducted almost no due diligence before or after consummating it, permit the conclusion that the purchase price stated in the contract of sale was not a reliable indicator of the subject property's value. The court also providently sustained the Village's objection to the entry of a letter of intent dated August 30, 2005, into evidence because, among other things, neither of the parties' appraisers relied upon it in formulating their appraisal reports (see 22 NYCRR 202.61[e]).
"'Generally fair market value is determined by reference to the sales prices of similar parcels in the area. In using this method of valuation, the expert witness begins with the sales prices of the comparable parcels and makes adjustments upon them based upon his own experience to arrive at a probable market price for the subject premises for its highest and best use'" (Manson v Kejo Enters., LLC, 145 AD3d 994, 995, quoting Matter of City of New York [Rudnik], 25 NY2d 146, 148-149). An appraisal of the value of real property in a just compensation case must "set forth the requisite 'statement of the method of appraisal relied on and the conclusions as to value reached by the expert, together with the facts, figures and calculations by which the conclusions were reached'" (Matter of New Cr. Bluebelt, Phase 4, 122 AD3d 859, 863, quoting 22 NYCRR 202.60[g][3]; see Matter of New Cr. Bluebelt, Phase 3, Staten Is. Land Corp [City of New York], 168 AD3d 745, 748).
Here, the Supreme Court properly, in effect, treated the Village's comparison sale 5 as two separate comparison sales in accordance with the claimants' appraisal. Although sale 5 involved the transfer of contiguous parcels to a single owner within a short period of time (cf. Matter of Village of Port Chester [Bolonga], 95 AD3d 895, 896), the owner did not make an application to alter the pre-existing approvals for those sites until after the sale of the second parcel, and that application was not granted until after the vesting date. The Village's analysis of sale 5 thus violates the general rule that a condemned property must be "'valued as of the date of its actual taking'" (90 Front St. Assoc., LLC v State of New York, 79 AD3d 708, 709-710, quoting Matter of Nassau, County of v 408 Realty Corp. , 283 AD2d 644, 644).
The Supreme Court properly rejected the adjustments applied by the claimants' appraiser to the comparable sales prices he relied upon to value the subject property. In particular, the claimants' market conditions adjustment lacked support in the record because their indirect evidence as to the health of the housing market between 2006 and 2008 failed to substantiate their positive 1% adjustment per month up to and including the vesting date. The claimants' location adjustment also lacked support in the record in light of their failure to offer any proof substantiating how their appraiser quantified the local conditions the adjustment purportedly considered. The court also properly rejected the Village's encumbrance, access, utilities, and approvals adjustments, as the [*4]Village failed to support each with sufficient factual exhibits.
However, the Supreme Court should not have rejected the Village's market conditions adjustment and topography adjustment. Contrary to the claimants' arguments, the Village's appraiser substantiated these adjustments with sufficient facts, figures, and calculations to support both, including for example charts depicting the change in housing prices around the time of the vesting date. The Village's location adjustment is also supported by the record when viewed in light of certain corrections the Village's appraiser conceded in his testimony at trial. We also disagree with the court's rejection of so much of the Village's extraordinary construction costs adjustment as accounted for $621,818 in stormwater management, sewer pumps, and excavation costs. These costs were not the same as the extraordinary construction costs attributable to atypical foundation costs, which the court providently rejected given the absence of deep soil testing at the subject property and the conflicting opinions of the parties' experts as to whether soil conditions at a nearby site indicated the same were present at the subject property.
Accordingly, we reverse the judgment and remit the matter to the Supreme Court, Rockland County, for a new calculation of damages based upon the Village's highest and best use, and which (1) considers the transactions underlying the Village's comparison sale 5 as two separate transactions; (2) applies the Village's market conditions and topography adjustments; (3) applies the Village's location adjustment as corrected in accordance with the testimony of the Village's appraiser; and (4) applies the Village's extraordinary construction costs adjustment to the extent of $621,818 in stormwater management, sewer pumps, and excavation costs.
The parties' remaining contentions are without merit, are not properly before this Court, or need not be reached in light of our determination.
CHAMBERS, J.P., AUSTIN, LASALLE and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court