Pacific Carlton Dev. Corp. v New York State Urban Dev. Corp. (2022 NY Slip Op 04031)

Pacific Carlton Dev. Corp. v New York State Urban Dev. Corp.

2022 NY Slip Op 04031

Decided on June 22, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 22, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
ANGELA G. IANNACCI
CHERYL E. CHAMBERS
DEBORAH A. DOWLING, JJ.

2018-03325
2019-04529
 (Index No. 1693/12)

[*1]Pacific Carlton Development Corp., et al., appellants,
v
New York State Urban Development Corporation, etc., respondent.

Biersdorf & Associates, P.A. (Dan Biersdorf and Joseph Muallem, New York, NY, of counsel), for appellants.
Applebaum Katz Brodsky, PLLC, New York, NY (Charles S. Webb III, Kenneth J. Applebaum, Judith Z. Katz, and Adam H. Brodsky of counsel), for respondent.
In a claim pursuant to EDPL article 5 for compensation arising from the condemnation of real property, the claimants appeal from (1) a judgment of the Supreme Court, Kings County (Wayne Saitta, J.), dated December 13, 2017, and (2) an order and amended judgment (one paper) of same court dated January 31, 2019. The order and amended judgment, insofar as appealed from, upon a decision of the same court dated November 15, 2017, made after a nonjury trial, and a decision of the same court dated March 19, 2018, in effect, denied that branch of the claimants' motion which was, in effect, pursuant to CPLR 4404(b) to set aside so much of the decision dated November 15, 2017, as determined their award and for a new trial, and is in favor of the claimants and against the condemnor in the principal sum of only $22,206,000.

DECISION & ORDER
Motion by the respondent, inter alia, to dismiss the appeal from the judgment on the ground that it was superseded by the order and amended judgment. By decision and order on motion of this Court dated August 2, 2019, that branch of the motion which is to dismiss the appeal from the judgment on the ground that it was superseded by the order and amended judgment was held in abeyance and referred to the panel of Justices hearing the appeals for determination upon the argument or submission thereof.
Upon the papers filed in support of the motion and the papers filed in relation thereto, and upon the submission of the appeals, it is
ORDERED that the branch of the respondent's motion which is to dismiss the appeal from the judgment on the ground that it was superseded by the order and amended judgment is granted; and it is further,
ORDERED that the appeal from the judgment is dismissed; and it is further,
ORDERED that the order and amended judgment is affirmed insofar as appealed from; and it is further,
ORDERED that one bill of costs is awarded to the respondent.
On March 1, 2010, as part of the Atlantic Yards project, the Empire State Development Corporation (hereinafter the ESDC) condemned several adjoining parcels of real property (hereinafter collectively the condemned property) located at Block 1129, Lots 4, 5, 6, and 13, at the intersection of Pacific Street and Carlton Avenue in Brooklyn. Lot 13 was owned by the claimant Pacific Carlton Development Corp., and improved by an office building with six above-ground levels, one subterranean level, and a separate one-story garage. The claimant 535 Carlton Realty Corp. owned Lots 4, 5, and 6, which fronted Carlton Avenue. Lots 4, 5, and 6 were minimally improved and used for either parking or refuse storage. The condemned property was located in an M1-1 manufacturing district, which allowed light commercial and manufacturing uses.
The claimants thereafter commenced this claim pursuant to EDPL article 5 for compensation for the condemnation. At a nonjury trial on the issue of compensation, the claimants proffered experts who opined that there was a reasonable probability that the condemned property would have been rezoned to C6-2A, which permits commercial uses up to a floor area ratio (hereinafter FAR) of six along with residential and community facility uses, and that the highest and best use of the condemned property was a mixed-use structure spanning all four lots. The ESDC, by contrast, proffered an exert opinion that it was unlikely that the condemned property would have been rezoned to C6-2A, and that the highest and best use of the condemned property was an office building on Lot 13 with adjoining parking on Lots 5 and 6, and holding Lot 4 for future use, which did not require a rezoning from its current M1-1 designation. The ESDC contended in the alternative that, if any portion of the condemned property were to have been rezoned, it would have been more likely that Lot 13 would have been rezoned to C4-4A, which permits commercial uses up to a FAR of four, than that the condemned property as a whole would be rezoned to C6-2A. The parties also disagreed, among other things, as to whether the subterranean level of the existing structure on Lot 13 qualified as a "basement" under the New York City Zoning Resolution (hereinafter the Zoning Resolution) (see NY City Zoning Resolution § 12-10 ["Basement," "Cellar"]), the degree to which the claimants' proposal required adjustments to account for the time, cost, and risk associated with obtaining a rezoning, and the value added by fixtures on the fifth and sixth floors of the existing structure on Lot 13.
After a nonjury trial, the Supreme Court determined in a decision dated November 15, 2017, inter alia, that it was more reasonably probable that the entirety of the condemned property would have been rezoned to C4-4A, rather than to C6-2A as advanced by the claimants, and that the subterranean level of the existing structure on Lot 13 was a "cellar" rather than a usable basement. The court determined just compensation for the condemned property to be $21,935,384, rounded off to $21,935,000, and a judgment dated December 13, 2017, was entered in favor of the claimants and against the ESDC in the principal sum of $21,935,000 less the ESDC's total advanced payments.
The claimants moved, inter alia, in effect, pursuant to CPLR 4404(b) to set aside so much of the decision dated November 15, 2017, as determined their award and for a new trial on the grounds, among others, that the Supreme Court failed to consider the value added to Lot 13 by fixtures on the fifth and sixth floors that had been left by a former tenant, failed to consider evidence showing that the condemned property would have been rezoned to C4-4A but for the announcement of the Atlantic Yards project, and erroneously omitted the area of the existing structure's subterranean level from the value of Lot 13. In a decision dated March 19, 2018, the court determined that the claimants' motion should be granted only to the extent of correcting a mathematical error in the decision dated November 15, 2017, and otherwise denied, and determined just compensation for the condemned property to be $22,206,083, rounded off to $22,206,000. The court thereafter entered an order and amended judgment dated January 31, 2019, which, inter alia, in effect, denied that branch of the claimants' motion which was, in effect, pursuant to CPLR 4404(b) to set aside so much of the decision dated November 15, 2017, as determined their award and for a new trial, and is in favor of the claimants and against the ESDC in the principal sum of $22,206,000 less the ESDC's total advanced payments. The claimants appeal.
"'In condemnation cases, the authority of this Court to review findings of fact after [*2]a nonjury trial is as broad as that of the trial court'" (Matter of Village of Haverstraw [Ray Riv. Co., Inc.], 191 AD3d 994, 995, quoting Matter of Mazur Bros., Inc. v State of New York, 97 AD3d 826, 828). "'This court may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses'" (Matter of Village of Haverstraw [Ray Riv. Co., Inc.], 191 AD3d at 995, quoting Matter of Mazur Bros., Inc. v State of New York, 97 AD3d at 828 [internal quotation marks omitted]). "The measure of damages in a condemnation case 'must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d 1087, 1088, quoting Chester Indus. Park Assoc., LLP v State of New York, 65 AD3d 513, 514 [internal quotation marks omitted]; see Matter of Village of Haverstraw [Ray Riv. Co., Inc.], 191 AD3d at 995-999). "The determination of highest and best use must be based upon evidence of a use which reasonably could or would be made of the property in the near future" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1088; see Matter of City of New York [Broadway Cary Corp.], 34 NY2d 535, 536).
"'In determining an award to an owner of condemned property, the findings must either be within the range of expert testimony or be supported by other evidence and adequately explained by the court'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1089, quoting Matter of City of New York [Reiss], 55 NY2d 855, 886; see Matter of Village of Haverstraw [Ray Riv. Co., Inc.], 191 AD3d at 995-999). "Where the parties offer inconsistent highest and best uses and their experts appraise only their own proposed uses, the award must be based upon the evidence offered by the party prevailing on the use question 'with such adjustments as the evidence will support'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1089, quoting Crosby v State of New York, 54 AD2d 1064, 1065; see Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d 654, 655-656).
Here, the Supreme Court's calculation of damages based upon its determination that the condemned property was more reasonably likely to be rezoned to C4-4A and not C6-2A fell within the range of expert testimony and was supported by the record. "'The potential uses the court may consider in determining value are ordinarily limited to those uses permitted by the zoning regulations at the time of taking'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1088-1089, quoting Matter of Town of Islip [Mascioli], 49 NY2d 354, 360). "However, when there is a reasonable probability of rezoning, some adjustment must be made to the value of the property to reflect that fact" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1089). Contrary to the claimants' contention, the evidence did not support their expert's opinion that the condemned property would be upzoned to the FAR permitted under a C6-2A designation given the City of New York's pursuit of transit-oriented development in Brooklyn. Rather, the court, in its discretion, properly credited the testimony of the ESDC's expert, who opined that rezoning actions around the condemned property show that the City would have prioritized other policy preferences over a desire for density near transit hubs and was more reasonably likely to limit upzoning of the condemned property to the density and height limits of a C4-4A district (cf. Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d 1087).
The Supreme Court also properly excluded the square footage of the subterranean level of the existing structure on Lot 13 from its calculation of damages upon its determination that it was a cellar and not a basement. Although the certificate of occupancy for the existing structure designated the subterranean level as a "basement," this designation need not be relied upon where, as here, the condemned property had no residential uses as of the vesting date (see Multiple Dwelling Law § 301[5]; see also P.O.K. RSA v Village of New Paltz, 157 AD2d 15, 19; Sextone v City of Rochester, 32 AD2d 737, 737). Moreover, the court properly measured the mean curb height along Lot 13's Pacific Street frontage alone in concluding that the subterranean level was a cellar rather than a basement (see NY City Zoning Resolution § 12-10 ["Basement"; "Base plane"; "Cellar"; "Curb level"; "Lot, corner"; "Lot, interior"]).
The claimants' further contention that the Supreme Court improperly reduced its calculation of damages by the time and cost incurred in obtaining a rezoning to C4-4A because the [*3]condemned property would have been rezoned anyway is without merit. There is no evidence in the record that the City denied an application regarding the use of the condemned property prior to the announcement of the Atlantic Yards project. Rather, the uncontroverted evidence at trial demonstrated that a tenant occupying the fifth and sixth floors of the existing structure on Lot 13 considered pursuing a rezoning to C4-4A prior to the condemnation, but abandoned those efforts without ever submitting a rezoning application.
The Supreme Court providently granted the ESDC's motion in limine to preclude the claimants from introducing a fixture appraisal and offering related testimony at trial. The appraisal and proposed testimony concerned only the sound value of the fixtures installed on the fifth and sixth floors of the existing structure on Lot 13. Sound value is the "reproduction cost less depreciation" (Matter of Mazur Bros., Inc. v State of New York, 97 AD3d at 829). It is generally used to compensate owners and tenants for the resources they invested to obtain and install fixtures when those parties would "suffer a significant loss if awarded compensation only for the value of the fee on the open market" (Matter of USA Niagara Dev. Corp. [Settco, LLC], 51 AD3d 377, 381). Here, the claimants did not make a separate fixtures claim, and they failed to show that the sound value of the subject fixtures bore any relationship to the value those fixtures added to Lot 13. Contrary to the claimant's contention, the ESDC did not waive this issue when it withdrew its objection to the claimants making an untimely fixtures claim (see EDPL 503[A], [C]; see also 22 NYCRR 202.61[d]), since, despite the nature of the evidence, the claimants did not make a separate fixtures claim.
The Supreme Court otherwise properly accounted for the value the fixtures added to Lot 13 in determining the claimants' damages. An "'appropriation of land . . . is an appropriation of all that is annexed to the land, whether classified as buildings or fixtures . . . . The value of the fixtures ought, therefore, to [be] considered in estimating the total value of the property appropriated by the State'" (Matter of City of New York [Kaiser Woodcraft Corp.], 11 NY3d 356, 359, quoting Jackson v State of New York, 213 NY 34, 36). Here, the portions of the ESDC's appraisal adopted by the court made deductions to the value of Lot 13 equal to the cost of bringing the first through fourth floors into rentable condition. With limited exception, the valuation did not include similar deductions for the fifth and sixth floors. The court thus considered the value added to Lot 13 by the fixtures on the fifth and sixth floors insofar as they obviated the need to make further deductions to bring the fifth and sixth floors into rentable condition.
The parties' remaining contentions either are without merit or need not be reached in light of our determination.
BARROS, J.P., IANNACCI, CHAMBERS and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court